STUART, Justice.
Grantland Rice II, Joseph Robinson, Richard Robinson, Marvin E. Bruce, Michael S. Starnes, Laura M. Starnes, J.N. Raines, Julie Raines, the Michael S. Starnes Charitable Remainder Unitrust, Fischer Lime & Cement Co., TCX, Inc., the Bryce Family Limited Partnership, the Hope Christian Community Foundation, the Urban Child Institute, the Mayer & Morris Kaplan Foundation, Daniel R. Lewis, Jan R. Lewis, RJKB Investments, LLLP, and DJMD, LP (hereinafter referred to collectively as “the sharehold *47 ers”), sued Regions Financial Corporation (“RFC”), the RFC subsidiary Morgan Asset Management, Inc. (“MAM”), and MAM employee James C. Kelsoe (hereinafter referred to collectively as “the defendants”), in the Jefferson Circuit Court, asserting multiple counts of securities fraud stemming from the collapse of six Regions Morgan Keegan investment funds (“the RMK funds”).[1] The defendants moved to dismiss the complaint, arguing, among other things, that the claims asserted by the shareholders were derivative claims that belonged to the RMK funds themselves— not to the individual investors in those funds — and that the claims could therefore be asserted only by a shareholder derivatively and in compliance with Rule 28.1, Ala. R. Civ. P., with which it is undisputed the shareholders have not complied. The trial court denied the defendants’ motion to dismiss, and the defendants now petition this Court for a writ of mandamus directing the trial court to vacate its order denying their motion to dismiss and to enter an order granting the motion. We grant the petition and issue the writ.
I.
The shareholders described the basic facts underlying their claims as follows in their second amended complaint:
“14. [Shareholders] are investors who were seeking a high-yield bond fund as either a component to their investment portfolio or were specifically seeking an income-producing investment.
“15. Between December 2002 and July 2007, [the shareholders] were fraudulently induced to invest in one of the six RMK funds advised, managed, and/or controlled by [the defendants]. Though marketed as different funds, the six RMK funds were actually the same fund and their performance is almost identical. In making their investment decisions, [the shareholders] relied upon the representations and omissions of MAM and Kelsoe in both the written materials and the direct presentations made by MAM and Kelsoe.
“16. By December 2007, all six of the RMK funds collapsed, causing [the shareholders] to lose most if not all of their investment. The six RMK funds lost $2 billion between March 31, 2007, and March 31, 2008. As set forth below, the losses in the funds were not the result of a flight-to-quality or a decline in value of high-yield, mortgage-backed or asset-backed debt as represented by [the defendants]. The losses were the result of over-concentration of investments in the highest-risk mortgage- or asset-backed debt investment, an investment strategy that was fraudulently concealed from investors until well after losses were incurred. Upon' information and belief, the RMK funds never were the high-yield, low-risk, stable, diversified bond funds MAM and Kelsoe represented. This misrepresentation and concealment caused [the shareholders] to buy, sell and/or hold certain interests in the RMK funds at various times under the false impression that the losses were due to other innocent factors, i.e., factors unrelated to the defendants’ malfeasance and serial disregard for applicable investing standards.”
Since the collapse of the RMK funds, more than 20 lawsuits — including class actions, derivative suits, and individual actions — have been filed against RFC, MAM, Kelsoe, and other affiliated companies and individuals, similarly alleging that MAM *48 had mismanaged and misrepresented the nature of the RMK funds, had failed to properly value the assets held by the RMK funds, and had failed to follow the guidelines of the RMK funds with regard to liquidity and asset concentration. Many of the lawsuits have been consolidated in federal court in the United States District Court for the Western District of Tennessee by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407.[2] The defendants have twice attempted to remove the underlying action to federal court; however, the United States District Court for the Northern District of Alabama has remanded the action to the Jefferson Circuit Court on both occasions, holding that the federal court did not have subject-matter jurisdiction over the claims asserted by the shareholders.[3] The shareholders have also all pursued claims against their investment broker — Morgan Keegan & Company, Inc. (“Morgan Kee-gan”), another RFC-affiliated company — in arbitration proceedings pending before the Financial Industry Regulatory Authority (“FINRA”), and the United States Securities and Exchange Commission, FINRA, and regulators from Alabama, Kentucky, Mississippi, and South Carolina have all initiated administrative proceedings against MAM, Morgan Keegan, and/or Kelsoe.
As was the case when the defendants attempted to remove this action to federal court, the issue now before this Court is one of subject-matter jurisdiction. Specifically, the defendants argue that the shareholders’ ownership interests in' the *49 RMK funds subject them to the requirements of Rule 23.1, Ala. R. Civ. P., which mandate that they make demand upon the “directors or comparable authority” of the RMK funds before initiating a derivative action — which, the defendants argue, this action in fact is regardless of the label the shareholders have attached to it — and that the shareholders accordingly lack standing because they failed to comply with Rule 23.1 by making such demand. See Baldwin County Elec. Membership Corp. v. Catrett, 942 So.2d 337, 344 n. 9 (Ala.2006) (“Rule 23.1 states that to maintain a derivative action, the plaintiff must ‘allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority....’ ... There is no evidence in the record indicating that the plaintiffs made a demand upon the board of trustees before filing this action. In addition, the plaintiffs did not allege in their complaint that they had made a demand upon the cooperative’s board of trustees. If the plaintiffs should have brought this action derivatively, as [the defendants] contend[ ], then the plaintiffs lack standing to maintain the action because no evidence was presented indicating that they met the director-demand requirement.”). We have further stated:
“Mandamus review is available where the petitioner challenges the subject-matter jurisdiction of the trial court based on the plaintiffs alleged lack of standing to bring the lawsuit.
“ ““ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000).’
“ ‘ “Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003) (emphasis added). ‘When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.’ State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). Under such a circumstance, the trial court has ‘no alternative but to dismiss the action.’ 740 So.2d at 1029.” ’
“Ex parte Richardson, 957 So.2d 1119, 1124 (Ala.2006) (quoting Ex parte Chemical Waste Mgmt., Inc., 929 So.2d 1007, 1010 (Ala.2005)).”
Ex parte HealthSouth Corp., 974 So.2d 288, 292 (Ala.2007). A trial court has no discretion to preside- over an action when subject-matter jurisdiction is lacking; accordingly, we review de novo whether the shareholders’ claims are derivative or direct claims in order to determine whether the trial court erred by denying the defendants’ motion to dismiss. See Jones v. Regions Bank, 25 So.3d 427, 434 (Ala.2009) (citing BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310, 312 (Ala.2004)) (“Questions of law are reviewed de novo.”).
II.
We first note that the RMK funds are incorporated in Maryland and that the determination whether the shareholders’ claims are derivative or direct must accordingly be made in accordance with Maryland law. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); and Massey v. Disc Mfg., Inc., 601 So.2d 449, 454-55 (Ala.1992). In Strougo v. Bassini, 282 F.3d 162, 169-71 (2d Cir.2002), the United *50 States Court of Appeals for the Second Circuit summarized the relevant Maryland law as follows:
“Waller v. Waller, 187 Md. 185, 49 A.2d 449 (1946), remains the leading Maryland case on shareholder standing. There, a shareholder brought a direct action against, inter alios, a corporation’s sales manager alleging that he and others had caused injury to the shareholder through the improvident discharge of employees, diversion of customers to competitors, choice of detrimental pricing policies, embezzlement of corporate funds, and disruption of corporate governance activities. Id. at 189, 49 A.2d at 451-52. In ruling that the plaintiffs claims could not be brought in a direct shareholder suit, the Maryland Court of Appeals observed:
“ ‘It is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder, though the injury may incidentally result in diminishing or destroying the value of the stock. The reason for this rule is that the cause of action for injury to the property of a corporation or for impairment or destruction of its business is in the corporation, and such injury, although it may diminish the value of the capital stock, is not primarily or necessarily a damage to the stockholder, and hence the stockholder’s derivative right can be asserted only through the corporation.’
“Id., 49 A.2d at 452. The Court of Appeals further explained:
“‘The rule is advantageous not only because it avoids a multiplicity of suits by the various stockholders, but also because any damages so recovered will be available for the payment of debts of the corporation, and, if any surplus remains, for distribution to the stockholders in proportion to the number of shares held by each.’
“Id. at 189-90, 49 A.2d at 452. Thus, Waller noted that a direct action for injuries shared by the corporation may inequitably displace the claims of creditors and thereby subvert the creditors’ priority. The court then determined that the injuries alleged by the plaintiff derived from injuries to the corporation itself, and thus the plaintiff lacked standing to bring direct claims. Id. at 191, 49 A.2d at 453.
[[Image here]]
“In deciding whether a shareholder may bring direct suit, the question the Maryland courts ask not whether the shareholder suffered injury; if a corporation is injured those who own the corporation are injured too. The inquiry, instead, is whether the shareholders’ injury is ‘distinct’ from that suffered by the corporation. Tafflin [v. Levitt], 92 Md.App. [375,] 381, 608 A.2d [817,] 820 [(1992)].
“Tafflin deals not with a shareholders’ suit, but with the analogous situation of depositors in an insolvent savings and loan association seeking to recover for losses against the association’s directors, officers, accountants, lawyers, and others. It is nonetheless illuminating because it explains, in comparable circumstances, the ‘distinct injury' requirement by reference to the concern expressed in Waller for making damages recovered for injury to the corporation available to pay the debts of the corporation.
“ ‘Appellants’ [alleged injuries] are not distinct from the injury sustained by [the bank] and all its depositors as a result of appellees’ mismanagement and wrongdoing- [P]ermitting depositors to bring individual actions for *51 [mismanagement of funds] would invariably impair the rights of other general creditors and claimants with superior interests_ [T]hat ... fraud may have induced all of the depositors to make their original deposits does not justify bypassing this equitable and common-sense system for recovery.’
“Tafflin, 92 Md.App. at 381-82, 608 A.2d at 820 (internal citation omitted).
“Both Waller and Tafflin acknowledge that harm to shareholders may flow from injuries to a corporation’s business or property, including those that decrease the value of firm assets or otherwise impair the corporation’s ability to generate profits. Maryland law nonetheless provides that in such circumstances, despite the harm to shareholders, the corporation alone has a cause of action to recover for the injury asserted. Although shareholders suffer collateral injury, they may have that injury redressed only through the collateral effect of the results of the corporation’s lawsuit — which might, for instance, result in a recovery of damages by the corporation and thus a corresponding increase in share value. Allowing shareholders to recover directly, on the other hand, besides threatening the ‘multiplicity of suits’ cited by Waller, 187 Md. at 189, 49 A.2d at 452, makes possible recoveries that are inequitably distributed among those other than shareholders with an interest in the corporation. Specifically, if the corporation were in default on its debt, direct shareholder suits for corporate injury could defeat the prior claim of corporate creditors to corporate assets because the rule of limited liability would prevent the creditors from reaching damages recovered by the shareholders personally. Where shareholders suffer an injury that does not stem from an injury to the corporation’s business or property, by contrast, the corporation lacks standing to sue, and Maryland’s ‘distinct injury' rule allows shareholders access to the courts to seek compensation directly.
“Thus, under Maryland law, when the shareholders of a corporation suffer an injury that is distinct from that of the corporation, the shareholders may bring direct suit for redress of that injury; there is shareholder standing. When the corporation is injured and the injury to its shareholders derives from that injury, however, only the corporation may bring suit; there is no shareholder standing. The shareholder may, at most, sue derivatively, seeking in effect to require the corporation to pursue a lawsuit to compensate for the injury to the corporation, and thereby ultimately redress the injury to the shareholders.”
(Footnote omitted.) We must therefore determine whether the shareholders have suffered an injury that is distinct from the injury suffered by the RMK funds, or whether the injury to the shareholders merely derives from that injury.
The injury alleged by the shareholders is the loss of their investment as a result of the collapse of the RMK funds. The shareholders argue that that injury was the result of their reliance on misrepresentations made by MAM and Kelsoe and that their injury is unique to them — and thus their claims are direct claims — because they relied not only on misrepresentations made by MAM and Kelsoe in marketing materials, prospectuses, and annual and semiannual reports directed to all prospective and actual investors in the RMK funds, but they also relied on misrepresentations made by MAM and Kelsoe exclusively to them in repeated personal interactions during the summer of 2007. See shareholders’ brief, p. 17 (“The injury in this case as to the [shareholders] was *52 caused by misleading information provided directly by the [defendants] which induced the [shareholders] to buy or hold their interests (thus, no other investors were affected by these misstatements). Had the [shareholders] known the true value of [the RMK] funds or of the other material matters alleged in the complaint, they would have avoided these catastrophic investment losses by avoiding the [RMK] funds altogether or getting out of them before it was too late.”).
The defendants, however, argue that the root cause of the shareholders’ injury was actually the defendants’ failure to properly manage the RMK funds, i.e., to properly value the assets held by the RMK funds and to abide by the restrictions in the RMK funds on liquidity and asset concentration, and not by any misrepresentations made by MAM and Kelsoe, regardless of whether such misrepresentations were directed to the shareholders or to the public. Therefore, the defendants argue, the injury resulting from MAM and Kelsoe’s actions was inflicted first upon the RMK funds, and any injury suffered by the shareholders necessarily is derivative to that injury.
The shareholders vigorously refute this characterization of their claims, stating:
“The [defendants’] central contention is that their ‘decoding’ of the [shareholders’] otherwise clear allegations reveals that this action somehow seeks recovery for mismanagement. This argument cannot withstand scrutiny.
“As discussed above, the [shareholders] do not allege that the [RMK] funds at issue were devalued as a result of ‘mismanagement.’ Rather, the [shareholders] allege simply that the [defendants] were responsible at all material times for matters which were misrepresented, including the valuation and composition of the assets included in these funds. Because of that responsibility, the [shareholders] allege that the [defendants’] misstatements were intentional and that the [defendants] knew them to be false at the time they were made. Thus, these allegations identified by the [defendants] as relating to ‘mismanagement’ actually relate to the frauds alleged.”
Shareholders’ brief, pp. 14-15. However, although the shareholders appear therefore to be arguing that their claims must be direct claims because they are fraud claims, under Maryland law, fraud claims may still be derivative claims if the alleged injury is to the corporation. In Tafflin v. Levitt, 92 Md.App. 375, 608 A.2d 817 (1992), also discussed supra in the quoted excerpt from Strougo, the plaintiffs had asserted fraud claims against certain officers and directors of the failed Old Court Savings & Loan, Inc., a state-chartered savings and loan association, and the Court of Special Appeals of Maryland nevertheless held that those claims were derivative claims, stating:
“Appellants argue that the gravamen of their complaint is that appellees fraudulently induced them to deposit their money in Old Court and, therefore, they have stated a claim of direct injury since they, rather than Old Court, were injured by appellees’ fraud. We reject this argument.
“In In re Sunrise Securities Litigation, 916 F.2d 874 (3rd Cir.1990), a federal court was presented with the same argument as appellants present in the instant case, and similarly rejected the contention of depositors of an insolvent savings and loan institution that they had stated a claim that could be brought individually. The court reasoned as follows:
“ ‘Although the allegations are cast in terms of defendants’ misrepresenta *53 tion of and failure to disclose information, we believe that under the distinct circumstances of this case, such allegations do not state a claim of direct injury founded on fraud. The essence of the complaint is that defendants misrepresented the financial condition of Old Sunrise by failing to disclose that they had mismanaged Old Sunrise rendering the institution insolvent.... The asserted injury emanated from mismanagement, not fraud. Furthermore, in this case, the depositors’ loss cannot be separated from the injury suffered by the institutions and all other depositors, and the damages recoverable are assets of the institutions.’
“Other federal courts have likewise held that the remedy for fraudulent representations affecting all depositors of an insolvent savings and loan association belongs to the institution’s receiver for the benefit of all depositors. See, e.g., Downriver Community Federal Credit Union v. Penn Square Bank, 879 F.2d 754 (10th Cir.1989); Brandenburg v. Seidel, 859 F.2d 1179 (4th Cir.1988).
“We find these decisions to be persuasive. Appellees’ alleged mismanagement and misappropriation of Old Court funds are assertable by [the Maryland Deposit Insurance Fund] in its capacity as Old Court’s receiver — the damages recoverable for appellees’ mismanagement and wrongdoing are assets of [the Maryland Deposit Insurance Fund] as receiver of Old Court and successor-in-interest of [the Maryland Savings-Share Insurance Corporation, a state-chartered insurer of deposits in Maryland savings and loan associations that collapsed in the period following Old Court’s collapse]. Appellants have alleged no special damages not common to other depositors. They allegedly relied upon misleading information available to all depositors. Appellants’ allegations of fraudulent representations are not distinct from the injury sustained by Old Court and all its depositors as a result of appellees’ mismanagement and wrongdoing. See Sunrise Securities, 916 F.2d at 887 (‘The injury — loss of principal or interest — is sustained by all depositors and is incidental to and dependent on injury to the institution.’). Under the circumstances, we think the requirements of a demand on the receiver and petition to the receivership court are applicable.
“ ‘The alternative, permitting depositors to bring individual actions for such injuries, would invariably impair the rights of other general creditors and claimants with superior interests. In our view, the fact that ... fraud may have induced all of the depositors to make their original deposits does not justify bypassing this equitable and common-sense system for recovery[.]’
“Sunrise Securities, 916 F.2d at 887. See also Pritchard [v. Myers], 174 Md. [66,] 79, 197 A. 620 [ (1938) ] (‘In this manner, the jurisdiction of the court will be retained, a multiplicity of suits averted, and the rights and interests of all parties concerned enforced and protected.’).”
92 Md.App. at 380-82, 608 A.2d at 819-20 (footnote omitted). The shareholders argue to this Court that Tafflin has “no remote connection to this actiori [because it] falls under a body of law relating exclusively to depositor claims against insolvent financial institutions in receivership,” shareholders’ brief, pp. 21-22; however, although the facts in Tafflin may not be perfectly analogous to those in the present case, we agree with the Strougo court that “[i]t is nonetheless illuminating because it explains, in comparable circumstances, the *54 ‘distinct injury' requirement,” which requirement, under Maryland law, determines whether claims are in fact direct or derivative. Strougo, 282 F.3d at 170.
We further note that the shareholders’ reliance on Shenker v. Laureate Education, Inc., 411 Md. 317, 983 A.2d 408 (2009), which, they state, “describes perfectly” why their claims are properly viewed as direct claims, is misguided. Shareholders’ brief, p. 12. In Shenker, certain minority shareholders in a corporation sued the corporation’s board of directors, alleging that the board had breached fiduciary duties owed the minority shareholders when the board, in a process initiated by the majority shareholders, decided to sell the corporation via a “cash-out” or “freeze-out” merger and then approved a share price the minority shareholders allege was too low. On the board’s motion, the trial court dismissed the minority shareholders’ complaint on the basis that they should have filed a derivative action instead of a direct action. However, the Court of Appeals of Maryland reversed that decision, holding that “where a shareholder’s action is based on breach of a duty owed directly to the shareholder, a direct action may be filed against the directors.” 411 Md. at 346, 983 A.2d at 425. The shareholders in the instant action argue that they easily surpass the standard set by the Shenker court because the fraud claims they have asserted are even more direct than the breach-of-fiduciary-duty claims brought by the minority shareholders in Shenker.
However, the present facts differ from those in Shenker. This case does not involve the alleged breach of fiduciary duties related to a cash-out merger, and the shareholders are not suing the directors of the RMK funds; rather, they are suing those responsible for the management of the RMK funds. Accordingly, the limited rule announced by the Shenker court that, “in a cash-out merger transaction where the decision to sell the corporation already has been made, shareholders may pursue direct claims against directors for breach of their fiduciary duties of candor and maximization of shareholder value,” 411 Md. at 342, 983 A.2d at 422, is inapplicable here, where the shareholders are essentially seeking damages for fraud based on the defendants’ misrepresentations covering up their alleged mismanagement of the RMK funds. Courts have generally rejected attempts by plaintiffs to convert traditionally derivative claims into direct claims based on the failure of the alleged guilty parties to disclose their bad acts, see, e.g., Kas v. Financial Gen. Bankshares, Inc., 796 F.2d 508, 513 (D.C.Cir.1986) (stating that “a plaintiff may not ‘bootstrap’ a claim of breach of fiduciary duty into a federal securities claim by alleging that directors failed to disclose that breach of fiduciary duty”), and Shenker in fact reaffirms the principle that a shareholder does not have standing to sue to redress an injury resulting from mismanagement of the corporation. 411 Md. at 342, 983 A.2d at 421.
In the instant case, the defendants represented to the shareholders that the RMK funds had a certain value per share, thus inducing them to hold their shares and/or to buy additional shares when, in fact, the true value of the shares was allegedly much lower because of the mismanagement by MAM and Kelsoe. Applying the principles discussed above to these facts, we conclude that the actions of MAM and Kelsoe first injured the RMK funds and only secondarily injured the shareholders; accordingly, in the absence of any distinct injury to the shareholders, the claims they now assert must be considered derivative claims belonging to the RMK funds, not direct claims. See also In *55 re Triarc Cos., 791 A.2d 872, 878 (Del.Ch.2001) (“ ‘[I]t may be said that, where the substantive nature of the alleged injury is such that it falls directly on the corporation as a whole and collectively, but only secondarily, upon its stockholders as a function of and in proportion to their pro rata investment in the corporation, the claim is derivative in nature and may be maintained only on behalf of the corporation.’” (quoting Donald J. Wolfe and Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery § 9-2, at 516 (1998))); and Smith v. Waste Mgmt., Inc., 407 F.3d 381, 386 (5th Cir.2005) (“ ‘To decide if the harm was to the corporation or to the stockholder individually, the [Delaware Supreme Court in Tooley [v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del.2004),]] suggested the most relevant question is whether the stockholder can prevail without showing an injury to the corporation. ... The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing a corresponding injury to the corporation. Applying those principles here leads to the conclusion that the [plaintiffs’] complaints are derivative, not direct, and could be asserted only on behalf of the corporation. The misrepresentations the [plaintiffs] allege caused their injury were based on mismanagement of the corporation’s assets. The [plaintiffs] cannot prove their injury without proving an injury to the corporation. We hold, therefore, that the [plaintiffs’] suit is derivative under Delaware law.’ ” (quoting Shirvanian v. DeFrates, 161 S.W.3d 102, 110 (Tex.App.2004)) (emphasis added)).[4] Accordingly, the shareholders’ claims should have been dismissed by the trial court for failing to comply with Rule 23.1.[5]
III.
After the shareholders sued the defendants in the Jefferson Circuit Court, asserting multiple counts of securities fraud stemming from the collapse of the RMK funds, the defendants moved to dismiss the complaint, arguing, among other things, that the claims asserted by the shareholders were derivative claims that belonged to the RMK funds and that the claims could therefore be asserted by a shareholder only derivatively and in compliance with Rule 23.1, Ala. R. Civ. P., with which it is undisputed the shareholders have not complied. The trial court denied the defen *56 dants’ motion to dismiss, and the defendants then petitioned this Court for a writ of mandamus directing the trial court to vacate its order denying their motion to dismiss and to enter an order granting the same. However, because the claims asserted by the shareholders are properly viewed as derivative claims, and because the shareholders did not comply with the requirements of Rule 23.1 for asserting such claims, the shareholders lack standing, and the defendants’ motion to dismiss should have been granted. We accordingly grant the defendants’ petition and issue a writ of mandamus directing the trial court to vacate its previous order denying the defendants’ motion to dismiss and to enter an order granting the motion.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and LYONS, WOODALL, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., dissents.

. MAM was the investment advisor for the RMK funds and Kelsoe was the manager of the RMK funds.

. 28 U.S.C. § 1407(a) provides:
“When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.”

. The defendants sought removal of this case and four similar cases pending in the Jefferson Circuit Court pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA”), codified in scattered sections of 15 U.S.C.
"Congress passed SLUSA with the intent to make federal court the exclusive venue for class actions alleging state fraud claims in the sale of ‘covered securities.’ Congress accomplished this goal by providing for the removal of state class action lawsuits to federal court, and requiring federal courts to dismiss those lawsuits that meet certain statutory requirements. See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1341 (11th Cir.2002). The Riley opinion summarized SLUSA’s requirements:
" ‘Under SLUSA, the removing party must show that (1) the suit is a "covered class action,” (2) the plaintiffs’ claims are based on state law, (3) one or more "covered securities” has been purchased or sold, and (4) the defendant misrepresented or omitted a material fact "in connection with the purchase or sale of such security.” ’
“Id. at 1342.”
Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252, 1253 (11th Cir.2003). The United States District Court for the Northern District of Alabama, however, held that SLU-SA did not apply to the 5 cases the defendants sought to remove because they did not meet the statutory definition of a "covered class action” in 15 U.S.C. § 77p(f)(2)(A)(ii) inasmuch as the 5 actions had not been joined or consolidated as a single action and because no individual action sought damages on behalf of more than 50 persons.

. Maryland courts often look to Delaware caselaw on issues of corporate law. Werbowsky v. Collomb, 362 Md. 581, 618, 766 A.2d 123, 143 (2001).

. The shareholders have also argued that this Court should deny the defendants’ petition for a writ of mandamus based upon the doctrine of judicial estoppel because the defendants previously attempted to remove this action to federal court pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), codified in scattered sections of 15 U.S.C., which, the shareholders argue, does not apply to derivative actions. However, the defendants ultimately failed in their attempt to remove the case; thus, the doctrine of judicial estoppel does not apply. See Pegram v. Herdrich, 530 U.S. 211, 228 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.”); and Jefferson County Comm’n v. Edwards, 49 So.3d 685, 689 (Ala.2010) ("In Ex parte First Alabama Bank, 883 So.2d 1236, 1244 (Ala.2003), quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001), this Court recognized an essential element of judicial estoppel — the party attacked for asserting an inconsistent position must have been successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first court or the second court was misled. No such circumstance exists here.”).