WOODALL, Justice.
Jean W. Reed, Mary W. Haynes, and Susan W. Stockham (hereinafter referred to collectively as “the sisters”) sued Regions Bank (“Regions”), Morgan Asset Management, Inc. (“MAM”), Morgan Kee-gan & Company, Inc. (“Morgan Keegan”), and Regions Financial Corporation (“RFC”), alleging several claims related to the investment of assets belonging to two trusts set up for the benefit of Reed and Haynes, respectively. MAM, Morgan Keegan, and RFC moved the Jefferson Circuit Court to dismiss the claims against them, arguing, among other things, that the claims were derivative in nature and could be asserted only in compliance with Rule 23.1, Ala. R. Civ. P.,[1] with which the sisters have not complied. The circuit *311 court denied the motion to dismiss, and MAM, Morgan Keegan, and RFC now petition this Court for a writ of mandamus directing the circuit court to vacate that order and to enter an order granting their motion to dismiss. We grant the petition and issue the writ.

Facts and Procedural History

In July 1982, Elizabeth Walter simultaneously created separate trusts for the benefit of her three daughters — Reed, Haynes, and Stockham. The trusts were created to provide each daughter with income during her lifetime. Stockham was designated as the sole trustee and contingent-remainder beneficiary of the trusts established on behalf of Reed and Haynes (“the subject trusts”).
In April 1983, Regions entered into an agreement by which it became the custodian for the assets of the subject trusts. In April 1994, Regions also agreed to manage the investments of the subject trusts.[2] According to the sisters’ amended complaint, Regions, a subsidiary of RFC, “is and has been one of the key units and components of the RFC group of brother-sister corporations operating for years and holding themselves out together as a Team under the operating trade name of ‘Regions Morgan Keegan Trust’ [‘RMKT’].” The sisters allege that the entities forming the RMKT team, including MAM and Morgan Keegan, which are also subsidiaries of RFC, participated in investment activities related to the subject trusts.
In March 2004, Walter died. Stockham, as trustee for the subject trusts, met with representatives of RMKT to discuss the investment goals for the subject trusts. In their amended complaint, the sisters alleged that “Stockham reminded Regions that she and her sisters were all older and unemployed, needing the income from their trusts to provide stable security and support them, their health expenses and living expenses for their lifetime,” but that “Regions, acting by and for itself and in concert with Defendants MAM and [Morgan Keegan] as the investment manager, investment advisor, and agent ... of the [subject trusts], ... made extensive investment in certain funds ... that were established and operated by companies closely affiliated with Regions.”
The sisters went on to allege that, at the time that the assets of the subject trusts were invested in funds established and operated by companies affiliated with Regions (“the RMK funds”), Regions, MAM, and Morgan Keegan knew that the RMK funds were “high-risk” and “unsuitable” for the sisters, who needed “stable, conservative, low-risk holdings that procured a secure and steady stream of income.” Further, the sisters alleged that “[t]he [RMK] [fjunds held assets that were overwhelmingly invested in illiquid, high-risk, complex structured investment vehicles ..., many of which were backed by sub-prime mortgages,” and that “[e]ach of the six RMK [fjunds (four of which are at issue here) suffered the same undisclosed defects and had the same (but similarly misrepresented) risk profiles.” Nevertheless, the sisters said, “MAM, in its capacity as a RMKT Team participant, advised Regions and the [sisters] to invest in and to retain their investments in the [RMK funds], knowing that the [RMK] [fjunds were plagued with extremely severe problems, as described above.”
The sisters also alleged in their amended complaint that, through both personal communications and in written account *312 statements regarding the subject trusts, Regions, along with MAM and Morgan Keegan, made material misrepresentations and omitted material facts, including “(1) that such RMK [fjund investments were suitable for acquisition, retention, holding and for the investment of the corpus of the [sjubject [tjrusts (which they were not); [and] (2) that such RMK [fjund investments were in fact correctly priced and valued (which they were not — they were consistently overvalued and listed as such by the RMKT Defendants in the course of RMKT operations and Fund operations.” The sisters alleged that, “[ijn reliance on these material misrepresentations, [they] continued to allow Regions to serve as investment manager, investment adviser, and fiduciary for the [sjubject [tjrusts, continued to allow Morgan Keegan and MAM to serve as resources for Regions in its investment of the corpus of the [sjub-ject [tjrusts, and continued to hold the investment in the RMK [fjunds in the [sjubject [tjrusts.”
The sisters alleged further that, during 2007,
“the as-reported value of the RMK [fjunds decreased materially (despite the continued mis-valuation and mispricing of [RMK] [fjund assets which assisted in masking the true extent of the [RMK] [fjunds’ problems). As [the sisters] observed such reported declines, several times in 2007 and extending into 2008, [the sisters] made inquiries with Regions and MAM representatives as to the stability of the RMK [fjunds and as to Defendants’ opinion of the wisdom in continuing to hold the RMK [fjunds as assets of the trusts and accounts described above. In response, representatives and agents of Regions and MAM, on behalf of all Defendants and the RMKT Team, assured [the sisters] that the RMK [fjunds remained solid investments and that there was no need for undue concern. Representatives of Defendants MAM and Regions advised [the sisters] that the value of the RMK [fjunds would soon stabilize and that a recovery of the lost value of their positions in the [fjunds should be expected. Defendants made misrepresentations to [the sisters], informing [them] that the assets of the RMK [fjunds were substantial and safe and thus that the recent reduction in value was a temporary market reaction. Despite knowing that the RMK [fjunds faced calamity and that the [fjunds’ financial strength and stability were ever-worsening, representatives of Regions and MAM, acting on behalf of all Defendants, suppressed such information and told [the sisters] to ‘stand pat.’
“... In reliance upon this information, the [sisters] did as the Regions and MAM representatives advised and took no action to force Regions to divest the [subject] trusts of their investments in the [RMK] [fjunds.”
According to the sisters, as the value of the RMK funds declined, Regions and its RMKT affiliates sold off their own investments in the RMK funds, but did not warn the sisters of the precarious situation of the RMK funds or take any steps to divest the subject trusts of their investment in the RMK funds. The sisters alleged that, before November 2008, no one ever informed Stockham that there were any problems with the RMK funds or that Reed’s and Haynes’s income stream would be affected by the drop in the value of the RMK funds.
In November 2008, Stockham fired Regions as custodian of and investment advis- or to the subject trusts, and the sisters filed an action in the Jefferson Circuit Court naming as defendants Regions and MAM. Reed and Haynes each sued in *313 their individual capacities as beneficiaries of the subject trusts. Stockham sued as both contingent-remainder beneficiary and trustee of the subject trusts.[3]
In October 2010, the sisters amended their complaint, purporting to “ ‘clean up’ the pleadings in this case ... and to restate and refine the[ir] claims” and adding Morgan Keegan and RFC as defendants. In their amended complaint, the sisters asserted claims of breach of fiduciary duties, negligence, wantonness, fraud, reckless and/or negligent misrepresentation, suppression, deceit, common-law indemnity, violation of the Alabama Securities Act, conspiracy to deceive and defraud, and breach of statutory duty pursuant to § 19-3B-807, Ala. Code 1975.
In December 2010, MAM, Morgan Kee-gan, and RFC moved the circuit court to dismiss the claims against them, arguing that the circuit court lacked subject-matter jurisdiction over the claims. MAM, Morgan Keegan, and RFC argued that, pursuant to our decision in Ex parte Regions Financial Corp., 67 So.3d 45 (Ala.2010) (hereinafter “RFC”), the sisters’ claims against them were derivative in nature and, therefore, were subject to the requirements of Rule 23.1. MAM, Morgan Keegan, and RFC also argued that, because the sisters had not complied with Rule 23.1, they did not have standing to assert the derivative claims and that, therefore, the circuit court should have dismissed those claims for lack of subject-matter jurisdiction.
On February 10, 2011, the circuit court issued an order denying the motion to dismiss. MAM, Morgan Keegan, and RFC now petition this Court for a writ of mandamus “directing the Circuit Court to vacate its February 10, 2011 Order and to enter an order dismissing [the sisters’] claims.”

Standard of Review

We have stated:
“ ‘Mandamus review is available where the petitioner challenges the subject-matter jurisdiction of the trial court based on the plaintiffs alleged lack of standing to bring the lawsuit.
“ ““ “ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000).”
“ ‘ “ ‘Ex parte Liberty Nat'l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003) (emphasis added). “When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). Under such a circumstance, the trial court has “no alternative but to dismiss the action.” 740 So.2d at 1029.’”
“ 'Ex parte Richardson, 957 So.2d 1119, 1124 (Ala.2006) (quoting Ex parte Chemical Waste Mgmt., Inc., 929 So.2d 1007, 1010 (Ala.2005)).’
“Ex parte HealthSouth Corp., 974 So.2d 288, 292 (Ala.2007). A trial court has no *314 discretion to preside over an action when subject-matter jurisdiction is lacking; accordingly, we review de novo whether the [sisters’] claims are derivative or direct claims in order to determine whether the trial court erred by denying [MAM, Morgan Keegan, and RFC’s] motion to dismiss.”
RFC, 67 So.3d at 49.

Analysis

In arguing that the claims against them are derivative and that they are therefore entitled to a writ of mandamus, MAM, Morgan Keegan, and RFC rely heavily on our decision in RFC. The plaintiffs in RFC
“sued [RFC], the RFC subsidiary [MAM], and MAM employee James C. Kelsoe (hereinafter referred to collectively as ‘the [RFC ] defendants’) in the Jefferson Circuit Court, asserting multiple counts of securities fraud stemming from the collapse of six Regions Morgan Keegan investment funds (‘the RMK funds’). The [RFC] defendants moved to dismiss the complaint, arguing, among other things, that the claims asserted by the shareholders were derivative claims that belonged to the RMK funds themselves — not to the individual investors in those funds — and that the claims could therefore be asserted only by a shareholder derivatively and in compliance with Rule 23.1, Ala. R. Civ. P., with which it [was] undisputed the shareholders ha[d] not complied. The trial court denied the [RFC] defendants’ motion to dismiss, and the RFC defendants ... petitioned] this Court for a writ of mandamus directing the trial court to vacate its order denying their motion to dismiss and to enter an order granting the motion.”
RFC, 67 So.3d at 47. In their complaint, the plaintiffs in RFC alleged, among other things, that they “ “were fraudulently induced to invest in one of the six RMK funds advised, managed, and/or controlled by [the RFC defendants],’ ” that they had “ ‘relied upon the representations and omissions of MAM and Kelsoe in both the written materials and the direct presentations made by MAM and Kelsoe,’ ” and “ ‘that all six of the RMK funds collapsed, causing [the RFC plaintiffs] to lose most if not all of their investment.’” RFC, 67 So.3d at 47. The RFC plaintiffs also stated:
“ ‘The losses were the result of over-concentration of investments in the highest-risk mortgage- or asset-backed debt investment, an investment strategy that was fraudulently concealed from investors until well after the losses were incurred. Upon information and belief, the RMK funds never were the high-yield, low-risk, stable, diversified bond funds MAM and Kelsoe represented. This misrepresentation and concealment caused [the RFC plaintiffs] to buy, sell and/or hold certain interests in the RMK funds at various times under the false impression that the losses were due to other innocent factors, i.e., factors unrelated to the [RFC] defendants’ malfeasance and serial disregard for applicable investing standards.’ ”
RFC, 67 So.3d at 47.
In addressing the claims in the mandamus petition in RFC, this Court “note[d] that the RMK funds [were] incorporated in Maryland and that the determination whether the [RFC plaintiffs’] claims are derivative or direct must accordingly be made in accordance with Maryland law.” RFC, 67 So.3d at 49. Further, this Court noted that, in Strougo v. Bassini, 282 F.3d 162 (2d Cir.2002), the United States Court of Appeals for the Second Circuit (“the Second Circuit”) had summarized the relevant Maryland law, determining, among other things, that, “ ‘[i]n deciding whether *315 a shareholder may bring a direct suit, the question the Maryland courts ask is not whether the shareholder suffered injury; if a corporation is injured those who own the corporation are injured too. The inquiry, instead, is whether the shareholders’ injury is “distinct” from that suffered by the corporation.’ ” RFC, 67 So.3d at 50 (quoting Strougo, 282 F.3d at 170).
Applying that principle in RFC, this Court stated:
“The injury alleged by the [RFC plaintiffs] is the loss of their investment as a result of the collapse of the RMK funds. The [RFC plaintiffs] argue that that injury was the result of their reliance on misrepresentations made by MAM and [its employee James C.] Kel-soe and that their injury is unique to them — and thus their claims are direct claims — because they relied not only on misrepresentations made by MAM and Kelsoe in marketing materials, prospectuses, and annual and semiannual reports directed to all prospective and actual investors in the RMK funds, but they also relied on misrepresentations made by MAM and Kelsoe exclusively to them, in repeated personal interactions during the summer of 2007....
“The [RFC] defendants, however, argue that the root cause of the [RFC plaintiffs’] injury was actually the [RFC] defendants’ failure to properly manage the RMK funds, i.e., to properly value the assets held by the RMK funds and to abide by the restrictions in the RMK funds on liquidity and asset concentration, and not by any misrepresentations made by MAM and Kelsoe, regardless of whether such misrepresentations were directed to the [RFC plaintiffs] or to the public. Therefore, the [RFC] defendants argue, the injury resulting from MAM and Kelsoe’s actions was inflicted first upon the RMK funds, and any injury suffered by the [RFC plaintiffs] necessarily is derivative to that injury.”
RFC, 67 So.3d at 51-52.
This Court noted that the RFC plaintiffs objected to the RFC defendants’ characterization of their claims. Nevertheless, we went on to state:
“In the instant case, the [RFC ] defendants represented to the [RFC plaintiffs] that the RMK funds had a certain value per share, thus inducing them to hold their shares and/or to buy additional shares when, in fact, the true value of the shares was allegedly much lower because of the mismanagement by MAM and Kelsoe. Applying the principles discussed above to these facts, we conclude that the actions of MAM and Kelsoe first injured the RMK funds and only secondarily injured the [RFC plaintiffs]; accordingly, in the absence of any distinct injury to the [RFC plaintiffs], the claims they now assert must be considered derivative claims belonging to the RMK funds, not direct claims.”
RFC, 67 So.3d at 54. Because the claims were derivative and because the RFC plaintiffs had not complied with Rule 23.1, Ala. R. Civ. P., this Court concluded that “the shareholders lack[ed] standing and the [RFC] defendants’ motion to dismiss should have been granted.” RFC, 67 So.3d at 56.
Here, MAM, Morgan Keegan, and RFC argue that, like the claims in RFC, the “claims [against them] are specifically premised on alleged misrepresentations relating to the value per share of the RMK [f]unds at issue and on other alleged misrepresentations that constitute an attempt to cover-up the mismanagement of the [f]unds.” Petition, at 10. Therefore, MAM, Morgan Keegan, and RFC argue, the sisters, like the plaintiffs in RFC, have “failed to allege an injury distinct from the *316 injury to the [RMK funds],” petition, at 9, and “[t]his Court’s prior conclusions [in RFC ] ... are directly on point and require dismissal of [t]he [sisters’] claims.” Petition, at 10-11. We agree.
The sisters, like the plaintiffs in RFC, frame their claims in terms of misrepresentation and fraud with regard to investment advice given and investment decisions made by MAM. They allege that the “Defendants falsely identified the RMK [fjunds to [the sisters] as stable, conservative, low-risk and suitable investments that could be expected to produce the secure income [the sisters] desired. In breach of fiduciary duties of disclosure and candor and in breach of the fiduciary duty not to engage in conflicts of interest, Defendants omitted to disclose to [the sisters] material adverse facts about the RMK [fjunds and their unsuitable nature for the [sisters].” The sisters also argue that, like the plaintiffs in RFC, they relied on those alleged misrepresentations and fraud to their detriment. However, as with the RFC plaintiffs, the alleged injury caused by these alleged misdeeds is that “the [s]ubject [tjrusts and thereby [the sisters] have been caused to suffer great pecuniary loss,” which occurred when “the value of the RMK funds dropped dramatically after the misrepresentations were made.”
Although the sisters have not expressly alleged that their losses resulted from mismanagement of the RMK funds, the allegations in their amended complaint, in fact, indicate that the devaluation of the RMK funds resulted from alleged mismanagement. The sisters allege, among other things, that
“Regions, MAM, and Morgan Keegan, along with their affiliates, were not properly marking to market or marking to model the true values of portfolio investments of the [fjunds (among many other deceptive acts and conduct of such parties) and were thus misrepresenting to [the sisters] in account statements and otherwise the current (as well as prospective) values of the RMK [fjunds; put another way, built-in losses were not being disclosed. As a result, when other investors decided to sell their interests in these closed-end RMK [fjunds (which happened with increasing frequency in 2007 and 2008), the RMK [fjunds were required to sell off their better assets to meet the demand for cash to pay off these sellers. This resulted in the RMK [fjunds being left with assets of increasingly poor and unstable quality as more investors sold their interests in the RMK [fjunds, which impacted the [subject [tjrusts and other investors in the RMK [fjunds who continued to hold such investments in a different and asymmetrical manner as opposed to those RMK [fjund investors who sold their shares when better assets were still remaining in the [fjunds.”
The sisters have also alleged that the RMK funds were “consistently overvalued ... by the RMKT defendants in the course of RMKT operations and [fjund operations,” were “very high risk and lacking in diversification,” and “held assets that were overwhelmingly invested in illiquid, high-risk, complex structured investment vehicles such as Collateralized Debt Obligations, many of which were backed by subprime mortgages.”[4]
*317 Thus, in spite of the various theories under which the sisters seek relief, it appears that here, as in RFC, their claim is essentially that they were injured by the diminution in value of the RMK funds, which was a result of alleged mismanagement. Therefore, the sisters, like the RFC plaintiffs, have alleged an injury that “ ‘ “falls directly on the corporation as a whole and collectively, but only secondarily, upon its stockholders as a function of and in proportion to their pro rata investment in the corporation.” ’ ” RFC, 67 So.3d at 55 (quoting In re Triarc Cos., 791 A.2d 872, 878 (Del.Ch.2001), quoting in turn Donald J. Wolfe and Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery § 9-2, at 516 (1998)). As we concluded in RFC, such claims are derivative and subject to the requirements of Rule 23.1.
The sisters object to this characterization of their claims and argue that “[t]his Court’s opinion in [RFC ] does not govern here, as these facts are materially distinct from those in [RFC].” The sisters’ brief, at 9. They argue that while “the [RFC] plaintiffs sued MAM for its malfeasance in its role as manager of the RMK [fjunds and its subsequent cover-up of such malfeasance,” they have “sue[d] MAM (and its sister/controlling entities [Morgan Keegan] and RFC) solely as investment advisor to the [subject] [t]rusts ... which, as a direct fiduciary, wrongly advised the [t]rusts to invest in and retain unsuitable investments (the RMK [f]unds). Therefore, [the sisters’] claims are totally different from those in [RFC] and are direct.” The sisters’ brief, at 10. They go on to argue that “because MAM, through RMKT, owed the [subject] [t]rusts individualized duties delegated it, arising apart from the [subject] [trusts’ status as a RMK [f]und shareholder, breaches of such duties and resulting harm are claims inuring directly to the [subject] [t]rusts.” The sisters’ brief, at 24-25 (emphasis in original).
Although the sisters have articulated several distinctions between the claims in this case and those in RFC and have correctly noted that the duties at issue here are distinct from those that were at issue in RFC, the alleged injury in both cases is the same — the suffering of financial losses when the RMK funds dropped in value, which ■ drop resulted from the alleged mismanagement of the RMK funds. As discussed previously, the standard under Maryland law for determining whether a claim is derivative or direct is “whether the [plaintiffs] have suffered an injury that is distinct from the injury suffered by the RMK funds.” RFC, 67 So.3d at 51. Under that standard, it is not individualized duties, but distinct harm, .that is dispositive. Because the sisters have not articulated a harm distinct from the harm suffered by the corporation, the alleged factual distinctions and individualized duties are distinctions without a difference.
The sisters also argue that “the circuit court [was] correct [in denying MAM, Morgan Keegan, and RFC’s motion to dismiss, because] the RMK funds lack standing to maintain claims based on duties owed to [the sisters], so [the sisters’] claims cannot be derivative.” The sisters’ brief, at 2. The circuit court raised a similar concern in its response to MAM, Morgan Keegan, and RFC’s mandamus petition, stating:
*318 “[T]he RMK funds would appear to lack standing to bring the kind of claims that are raised in the amended complaint. The alleged duties at issue are not duties owed to the RMK funds. The alleged duties involve steering individual customers toward suitable investments based on the customers’ particular desires, risk tolerances, and investment horizons.
“If the RMK funds lack standing to assert the claims at issue, how could such claims be derivative in nature? The essence of a derivative claim is a shareholder’s stepping into the shoes of a corporation, so to speak, to assert rights owned by that corporation. The undersigned sees no such rights here based on the allegations of the amended complaint. While the alleged role of MAM in managing the RMK funds may have a bearing on what MAM knew, and what it should have done in advising Regions’ customers, my focus in letting the case go forward is on the distinct duties claimed to be owed to those customers.”
(Emphasis in original.)
Again, the circuit court and the sisters are correct that the duties allegedly breached in this case are distinct from those owed by MAM, Morgan Keegan, and RFC in their roles as managers and investment advisors to the RMK funds. However, as noted previously, the disposi-tive issue under Maryland law is “whether the [sisters] have suffered an injury that is distinct from the injury suffered by the RMK funds, or whether the injury to the [sisters] merely derives from that injury.” RFC, 67 So.3d at 51. As we noted in RFC, the sisters’ alleged injury — that they suffered pecuniary loss from a devaluation of the RMK funds — is an injury suffered first by the funds and secondarily by the sisters. Therefore, the injury is not distinct and the claims are derivative. See RFC, 67 So.3d at 54 (“Applying the principles [of Maryland caselaw] discussed above to these facts, we conclude that the actions of MAM ... first injured the RMK funds and only secondarily injured the [sisters]; accordingly, in the absence of any distinct injury to the [sisters], the claims they now assert must be considered derivative claims belonging to the RMK funds, not direct claims.”).
The sisters argue that the circuit court’s determination that the claims against MAM, Morgan Keegan, and RFC are direct claims is supported by Maryland law. Specifically, they, like the RFC plaintiffs before them, urge this Court to apply the Maryland Court of Special Appeals’ decision in Shenker v. Laureate Education, Inc., 411 Md. 317, 983 A.2d 408 (2009), to the facts of this case. They argue:
“Shenker addressed the distinctions between direct and derivative cases and found: ‘[W]here a shareholder is cheated through misrepresentation and fraud during a sale of stock, no right of action accrues to the corporation because the stock is the personal property of the stockholder.’ [411 Md. at 346,] 983 A.2d at 425. ‘In such a case, the right of action lies with the stockholder.’ Id. (emphasis added).”
The sisters’ brief, at 23-24
The sisters acknowledge that “this Court in [RFC] limited Shenker to its facts,” the sisters’ brief, at 24, but argue that “the Maryland Court of Special Appeals recently expanded upon and extended the rule in Shenker, applying it in a non-cash-out merger context to find that ‘contractual, statutory, and fiduciary duties’ owed to plaintiffs give rise to direct claims and that a direct claim exists ‘when either (1) the shareholder suffers the harm directly or (2) a duty is owed directly to the shareholder....’” The sisters’ brief, *319 at 24 (quoting Wasserman v. Kay, 197 Md.App. 586, 620, 14 A.3d 1193, 1213 (2011)). However, the sisters’ characterization of Wasserman is overbroad.
In Wasserman, the Maryland Court of Special Appeals did not extend the Shenker ruling to apply in all contexts. Instead, it stated:
“While we agree with appellees that Shenker has a narrow application in the corporate context, its rationale supports the conclusion we reach in this ease. Extending the rationale in Shenker to the law of partnerships and LLCs, we conclude that the appellants have sufficiently alleged that (1) they suffered the harm directly; and that (2) Mr. Kay, as managing partner/member, violated duties owed directly to appellants.”
Wasserman, 197 Md.App. at 620-21, 14 A.3d at 1213 (emphasis added).
The claims in this case do not involve the law of partnerships or limited liability companies. Instead, they fall within the “corporate context,” in which, as the Was-serman court noted, the application of Shenker is “narrow.” Moreover, as this Court stated in RFC,
“the limited rule announced by the Shenker court that, ‘in a cash-out merger transaction where the decision to sell the corporation already has been made, shareholders may pursue direct claims against directors for breach of their fiduciary duties of candor and maximization of shareholder value,’ 411 Md. at 342, 983 A.2d at 422, is inapplicable here, where the shareholders are essentially seeking damages for fraud based on the defendants’ misrepresentations covering up their alleged mismanagement of the RMK funds. Courts have generally rejected attempts by plaintiffs to convert traditionally derivative claims into direct claims based on the failure of the alleged guilty parties to disclose their bad acts.... ”
RFC, 67 So.3d at 54.
As noted previously, the sisters’ claims are essentially the same as those at issue in RFC — that they suffered pecuniary loss when the RMK funds dropped in value, which drop they alleged was the result of mismanagement on the part of the defendants. Shenker was properly distinguished in RFC, and the holding in Shenker is of no benefit to the sisters here.
The sisters also argue that, under the Second Circuit’s decision in Strougo, which this Court relied on heavily in RFC, the claims against MAM, Morgan Keegan, and RFC are direct. The sisters argue:
“[Bjecause of the different facts underlying [RFC], the RFC opinion does not address the discussion ... in which the Strougo [court] cautions that ‘distinct injury’ refers not to injury distinct from that of other shareholders but to an injury distinct from that suffered by the corporation. [282 F.3d] at 172 (‘It is not true ... that if injury falls alike on all shareholders, legal action seeking redress for that injury may only be brought derivatively.’). Strougo further notes that ‘[t]here may be acts that injure shareholders equally but do not injure the corporation at all; indeed they might he seen as benefitting the corporation in the sense that they might increase its assets.’ Id. (emphasis added). That is exactly what is at work in this case. Thus, in Strougo, inducing existing shareholders to exercise rights to purchase additional shares may have benefited the corporation but resulted in the injury to the shareholders, and these claims were direct, not derivative. Similarly, the [subject] [t]rusts’ purchase and retention of RMK [fjund shares upon MAM’s advice and direction benefited the RMK [fjunds, whereas the *320 [subject] [tjrusts were injured. Thus, under Strougo ’s analysis of Maryland law, [the sisters] have established an injury distinct from the RMK [f]unds and retain a direct claim against MAM for its wrongdoing.”
The sisters’ brief, at 22-23.
The sisters’ reliance on language from Strougo is misplaced. In Strougo, the shareholders argued that they were injured when the corporation structured an offering so that the value of existing shares decreased and the existing shareholders had to purchase additional shares or else have their equity position diluted. The corporation argued that the shareholders’ claims were derivative because all the shareholders suffered the same injury. The Second Circuit disagreed, stating:
“The alleged injuries resulting from the coercive nature of the rights offering do not derive from a reduction in the value of the Fund’s assets or any other injury to the Fund’s business. Indeed, with reference to the shareholders that purchased new shares in order to avoid dilution, the acts that allegedly harmed the shareholders increased the Fund’s assets. And as for the non-participating shareholders, the reduced value of their equity did not derive from a reduction in the value of the Fund’s assets, but rather from a reallocation of equity value to those shareholders who did participate.
“Thus, in the case of both the participating and non-participating shareholders, it would appear that the alleged injuries were to the shareholders alone and not to the Fund.”
Strougo, 282 F.3d at 175.
The sisters attempt to argue that, as in Strougo, the alleged misrepresentations and fraud by MAM, Morgan Keegan, and RFC benefited the RMK funds because the sisters were induced to allow Regions and MAM to continue to purchase and hold shares in the RMK funds. However, the alleged injury here was not the purchase of the RMK funds per se, but, instead, was the pecuniary loss that occurred when the value of the funds “dropped dramatically.” Such an injury does “derive from a reduction in the value of the [RMK funds’] assets or [another] injury to the [RMK funds’] business.” Strougo, 282 F.3d at 175. Thus, the foregoing Strougo rationale does not apply here, and the sisters’ argument in this regard is without merit.
Finally, the sisters argue that, in Regions Bank v. Reed, 60 So.3d 868 (Ala.2010), “this Court recognized that [the sisters] had direct claims against MAM in its capacity as investment advisor to Regions and found that [the sisters’] claims against MAM derived not from its role as investment advisor/manager to the RMK [fjunds that were at issue but from its role as investment advisor to Regions and to the [subject] [tjrusts.” The sisters’ brief, at 29. The sisters urge this Court to “reaffirm that finding in denying [MAM, Morgan Keegan, and RFC’s] petition here.” Id. at 30.
In Reed, this Court examined, among other things, whether the claims against Regions and MAM should be addressed as part of a final-settlement action that had been filed by Regions in the probate court prior to the sisters’ filing of the underlying action against Regions and MAM in the circuit court. We determined that claims against Regions relating to trusts for which Regions was trustee or cotrustee were subject to the final-settlement action filed in the probate court and should be dismissed from the sisters’ complaint in the circuit court. We also determined that the claims against Regions related to the subject trusts — for which Regions served as custodian of the assets, but did not act as trustee — were not subject to the pro *321 bate court action and could, therefore, go forward in the circuit court.
With regard to the claims against MAM, we stated:
“In the last count of their complaint, the sisters charge MAM with ‘aiding and abetting1 Regions ‘in carrying out each of the breaches of duty, including breach of fiduciary duty, and including each of the violations of law and obligations committed by Regions’ listed in the previous counts of the complaint. Thus, the sisters’ claims against MAM are derivative of the sisters’ claims against Regions. Accordingly, the claims against MAM that involve the trusts that are the subject of the final-settlement action concern the administration of those trusts; therefore, those claims should be brought in the probate court. The claims against MAM that involve the [subject trusts] must remain in the circuit court, where the sisters’ claims against Regions concerning those trusts originated.”
Reed, 60 So.3d at 885.
The sisters now argue that, “[i]f [their] claims had been derivative (and thus if the court lacked subject-matter jurisdiction over them), it was this Court’s duty to recognize it then.” The sisters’ brief, at 29 (emphasis in original). However, the question whether the claims related to the subject trusts are derivative or direct was not before this Court in Reed. Thus, nothing in Reed can be read as a statement on the merits of the issue whether the claims are derivative rather than direct. It is well established that this Court can raise the issue of subject-matter jurisdiction ex mero motu. See, e.g., Ex parte V.S., 918 So.2d 908, 912 (Ala.2005) (“It is well settled that lack of subject-matter jurisdiction can be raised at any time by the parties or by the court ex mero motu.”). However, a failure to do so at one stage of the proceedings does not preclude the court from raising the issue later. The sisters have cited no authority to the contrary.

Conclusion

The sisters have not alleged an injury distinct from that suffered by the RMK funds; therefore, pursuant to the rationale set forth in RFC, the claims against MAM, Morgan Keegan, and RFC in the amended complaint are derivative. Because the sisters have not complied with the requirements of Rule 23.1, Ala. R. Civ. P., the circuit court does not have subject-matter jurisdiction over those claims, and MAM, Morgan Keegan, and RFC’s motion to dismiss should have been granted. See RFC, 67 So.3d at 56 (“[B]ecause the claims asserted by the shareholders are properly viewed as derivative claims, and because the shareholders did not comply with the requirements of Rule 23.1 for asserting such claims, the shareholders lack standing, and the defendants’ motion to dismiss should have been granted.”). Therefore, we grant the petition and issue a writ of mandamus, directing the circuit court to vacate its order denying MAM, Morgan Keegan, and RFC’s motion to dismiss and to enter an order granting that motion and dismissing the action as to those defendants.
PETITION GRANTED; WRIT ISSUED.
MALONE, C.J., and STUART, BOLIN, SHAW, and WISE, JJ„ concur.
PARKER, MURDOCK, and MAIN, JJ., dissent.

. Rule 23.1, Ala, R. Civ. P., sets forth the procedure that must be followed by shareholders seeking "to enforce a right of a corporation ..., the corporation ... having failed to enforce a right which may be properly asserted by it.” This Court has recognized that a plaintiff who fails to comply with the requirements of Rule 23.1 does not have standing to bring a derivative lawsuit. See Baldwin County Elec. Membership Corp. v. Catrett, 942 So.2d 337, 344 n. 9 (Ala.2006) ("If the plaintiffs should have brought this action derivatively, as [the defendants] contend[], then the plaintiffs lack standing to maintain the action because no evidence was presented indicating that they met the director-demand requirement [of Rule 23.1].”).

. The documents evidencing these transactions were entered into by First Alabama Bank, which is now known as Regions Bank.

. Further details regarding the origins and procedural history of this action can be found in our decision in Regions Bank v. Reed, 60 So.3d 868 (Ala.2010).

. The sisters assert in their brief that any allegations in the amended complaint related to MAM’s management of the RMK funds were “included ... solely to address scienter elements of their claims — to show how MAM knew material adverse facts that, as the [subject] [t]msts' investment advisor, it should have disclosed but instead concealed, as well as to highlight MAM’s conflicts of interest in duties owed [the sisters].” The sisters' brief, at 17. The sisters also argue that "the [amended complaint] includes fund misman *317 agement allegations simply to show how badly MAM advised the [subject] [t]rusts." Id. at 18. Nevertheless, the statements regarding the management of the RMK funds are sufficient to show that, according to the sisters, the alleged problems in the RMK funds were the result of mismanagement, which eventually led to the rapid devaluation of the RMK funds.