**IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE AND ERISA LITIGATION.**

**This Document Relates to:**

**Andrew M. Stein, et al., Plaintiffs,**

**v.**

**Regions Morgan Keegan Select High Income Fund, Inc., et al., Defendants.**

**No. 2:09–2009 SMH V**

United States District Court, W.D. Tennessee, Western Division.

Signed September 29, 2014

## ORDER

SAMUEL H. MAYS, JR., UNITED STATES DISTRICT JUDGE

Before the Court are Individual[1] Defendants' January 31, 2014 Motion to Dismiss Plaintiffs' Amended Complaint (the "Individual Motion"), and Fund[2] Defendants' January 31, 2014 Motion to Dismiss First Amended Complaint (the "Funds Motion") (collectively, "Defendants"). (Indiv. Motion, ECF. No. 5; Funds Motion, ECF No. 10.) Plaintiffs Andrew M. Stein ("Stein"), Stein Holdings, Inc. ("Stein Holdings"), and Stein Investments, LLC ("Stein Investments") (collectively, "Plaintiffs") responded to both Motions on March 26, 2014. (Indiv. Resp., ECF No. 13; Funds Resp., ECF No. 14.) Individual Defendants replied on April 9, 2014. (Reply, ECF No. 15.) Plaintiffs filed a sur-reply on April 21, 2014. (Sur–Reply, ECF No. 18.)

For the following reasons, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part.

## I. Background

Plaintiffs assert claims against Defendants based on Plaintiffs' purchase of publicly traded securities of the Funds. The Funds consist of open-end[3] and closed-

---

1. "Individual Defendants" are Regions Financial Corporation ("Regions"), RFC Financial Holding, LLC ("RFC Holding"), and Regions Investment Management, Inc., formerly known as Morgan Asset Management, Inc. ("MAM").

2. "Fund Defendants" or the "Funds" are the Regions Morgan Keegan Select Fund, Inc., ("RMS") (incorrectly sued as the "Regions Morgan Keegan Select Fund High Income") (which includes the RMK Select High Income Fund ("RSH"), the RMK Select Short Term Bond Fund ("RSS"), and the RMK Select Intermediate Bond Fund ("RSI")), RMK High Income Fund, Inc. ("RMH"), RMK Strategic

Income Fund, Inc. ("RSF"), RMK Advantage Fund, Inc. ("RMA"), and RMK Multi–Sector High Income Fund, Inc. ("RHY"). The names of some of the Funds in this action were changed to Helios Select Fund, Inc., Helios High Income Fund, Inc., RMK Strategic Income Fund, Inc., Helios Advantage Fund, Inc., and Helios Multi-Sector High Income Fund, Inc. after the Funds were acquired by Hyperion Brookfield Asset Management, Inc. on July 29, 2008.

3. The open-end Fund is: RMS, which includes RSH, RSS, and RSI. RMS is a Fund Defendant and, as an open-end management investment company, offered three portfolios

end[4] mutual funds that were "operated, managed, directed and/or sold by defendants...." (Am. Compl., ECF No. 4 ¶¶ 1, 10–14.) Plaintiffs allege that Defendants invested heavily in Asset–Backed Securities ("ABS") and, in particular, subprime mortgage-related ABS, in violation of a "fundamental investment limitation" meant to assure diversification of assets in which the Funds could invest. (*Id.* ¶¶ 41, 51a.) Plaintiffs assert that Defendants misrepresented the types of assets and the true value of the assets in which the Funds could invest. (*Id.* ¶ 51e.) Plaintiffs also allege that the Funds falsely classified their portfolio securities as corporate bonds and preferred stocks in SEC filings, overstated the values of their portfolio securities, mischaracterized the Funds as "high yield," and misrepresented the professional management of the Funds' portfolios. (*Id.* ¶ 59.)

## A. The Stein Arbitration

On September 3, 2008, Plaintiffs filed a Statement of Claim against Morgan Keegan & Company, Inc. ("Morgan Keegan") with the Financial Industry Regulatory Authority ("FINRA") (the "Stein Arbitration"). (Stat. Claim, ECF No. 6–1.) Plaintiffs' claims included: (1) violations of § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a (the " '34 Act"); (2) violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. § 77a (the " '33 Act"); (3) violations of § 34(b) and 47(b) of the Investment Company Act of 1940, 15 U.S.C. §§ 80a–33(b), 80a–46(b)(*l*) (the "ICA"); (4) violations of the Tennessee Securities Act, T.C.A. §§ 48–2–1, *et seq.* (the "TSA"); (5) violations of the National Association of Securities Dealers ("NASD") Conduct Rules; (6) unsuitability; (7) breach of fiduciary duty; (8) negligence; (9) failure to supervise; (10) breach of contract; (11)

fraud; (12) vicarious liability; and (13) civil conspiracy. (*Id.* at 10–18.) Plaintiffs requested compensatory damages of $10,000,000.00, punitive damages, interest, attorney's fees, expenses and costs, and disgorgement. (*Id.* at 19.)

The FINRA Panel (the "Panel") held hearings from February 8, 2010, to February 13, 2010. (FINRA Award at 9, ECF No. 6–4.) On February 19, 2010, the Panel found Morgan Keegan liable on Plaintiffs' unsuitability, negligence, and failure to supervise claims. (*Id.* at 8.) The Panel denied Plaintiffs' other claims. (*Id.*) The Panel awarded Plaintiffs $2,500,000.00 in damages, plus interest. (*Id.*) On March 17, 2010, Morgan Keegan paid $2,500,000.00 to Plaintiffs. (Wire Confirm., ECF No. 6–5.) Plaintiffs never sought to vacate the FINRA Award. (Indiv. Memo at 6, ECF No. 6.)

## B. The *Stein* Case

On August 29, 2008, Plaintiffs filed a complaint in the Circuit Court of Shelby County, Tennessee, against PricewaterhouseCoopers LLP ("PwC"), and 32 individual defendants, including Allen B. Morgan, Jr., James C. Kelsoe, Jr., Charles D. Maxwell, and Michele Wood (the "*Stein* Case"). (*Stein* Compl., ECF No. 6–3.) The claims in the *Stein* Case included: (1) violations of §§ 11, 12(a), and 15 of the '33 Act; (2) violations of §§ 34(b) and 47(b) of the ICA; (3) violations of the TSA; (4) civil conspiracy; and (5) professional negligence against PwC. (*Id.* ¶¶ 108–39.) Plaintiffs sought rescission, compensatory and punitive damages, pre- and post-judgment interest, and attorney's fees, costs, and expenses. (*Id.* at 31.)

On September 26, 2008, the *Stein* Case was removed to this Court. (Not. Rem., No. 2:08–cv–02 623–SHM–tmp, ECF No.

---

of common stock: RSH, RSS, and RSI. (Am. Compl. ¶ 10.)

**4.** The closed-end Funds are: RMH, RSF, RMA, and RHY.

1.) On December 24, 2008, Plaintiffs voluntarily dismissed their claims. (Not. Vol. Dismissal, No. 2:08–cv–02623–SHM–tmp, ECF No. 14.) On December 31, 2008, the Court dismissed the *Stein* Case without prejudice. (Dismissal Order, No. 2:08–cv–02623–SHM–tmp, ECF No. 15.)

### C. The *Rice* Case

On February 25, 2009, Grantland Rice, II and 18 other plaintiffs filed a complaint in the Circuit Court of Jefferson County, Alabama, against Regions Bank, MAM, James C. Kelsoe ("Kelsoe"), and 50 fictitious parties (the "*Rice* Case"). (ECF No. 6–6.) On July 21, 2009, the complaint was amended to add Regions as a defendant. (ECF No. 6–7.) On January 5, 2010, Plaintiffs were added as plaintiffs in the *Rice* Case. (ECF No. 6–8.) On March 18, 2010, a second amended complaint was filed (the "*Rice* Complaint"). (*Rice* Compl., ECF No. 6–9.) The claims in the *Rice* Case included: (1) misrepresentations, suppression, and fraudulent concealment; (2) breach of the TSA; (3) breach of the Georgia Securities Act, O.G.C.A. §§ 10–5–50, *et seq.*; (4) breach of the Alabama Securities Act, Ala. Code §§ 8–6–17, 8–6–19; (5) breach of the Florida Securities and Investment Protection Act, Florida Statutes §§ 517.011, *et seq.*; (6) breach of the Illinois Securities Act, 85 ILCS5/1, *et seq.*; (7) negligent supervision by MAM; and (8) conspiracy. (*Id.* at 23– 33.) The *Rice* plaintiffs sought actual and punitive damages, interest, attorney's fees, and costs. (*Id.*)

The Circuit Court of Jefferson County denied the *Rice* defendants' motion to dismiss, and the defendants petitioned the Supreme Court of Alabama to vacate the order denying their motion and to enter an order granting the motion. (*Rice* at 25, ECF No. 13–1.) On September 30, 2010, the Supreme Court of Alabama held that because the claims asserted by the shareholders are properly viewed as de-rivative claims, and because the shareholders did not comply with the requirements of Rule 23.1 for asserting such claims, the shareholders lack standing, and the defendants' motion to dismiss should have been granted.

(*Id.*) The Supreme Court of Alabama directed the trial court to vacate its previous order denying defendants' motion to dismiss and to enter an order granting the motion. (*Id.*) On January 17, 2011, the Circuit Court of Jefferson County dismissed the *Rice* Case with prejudice, with costs taxed as paid. (Dismissal Order, ECF No. 6–10.)

### D. The Instant Action

Plaintiffs filed this suit on October 25, 2013. (*See* ECF No. 1.) Plaintiffs amended their Complaint on January 9, 2014. (Am. Compl., ECF No. 4.) The Amended Complaint alleges six causes of action. (*Id.* ¶¶ 151–207.) Plaintiffs allege that Defendants violated §§ 11, 12(a)(2), and 15 of the '33 Act, and §§ 10(b) and 20(a), and Rule 10b–5 of the '34 Act (collectively, the "Federal Law Claims"). (*Id.* ¶¶ 151–202.) Plaintiffs allege that MAM is vicariously liable for Kelsoe's violations of § 12 of the '33 Act and § 10(b) and Rule 10b–5 of the '34 Act (the "State Law Claim"). (*Id.* ¶¶ 203–207.) Plaintiffs seek declaratory judgment, restitution, compensatory damages, prejudgment interest, and rescission rights. (*Id.* at 73.)

### II. Jurisdiction and Choice of Law

Plaintiffs bring their Federal Law Claims under the federal securities laws. The Court has federal question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the Plaintiffs' State Law Claim under 28 U.S.C. § 1367.

■ Plaintiffs' vicarious liability claim is based in tort law. Defendants argue that

Tennessee law applies to that claim. (Indiv. Memo at 16.) Plaintiffs do not contest Defendants' argument. Where, as here, there is no dispute that a certain state's substantive law applies, the Court will not conduct a "choice of law" analysis *sua sponte*. *See GBJ Corp. v. Eastern Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir.1998). Tennessee law applies to Plaintiffs' vicarious liability claim.

### III. Standard of Review

■ In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir.2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (*per curiam*). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.)

■ Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 1950.

■ Where a plaintiff makes allegations of fraud, including securities fraud, it must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir.2008). Rule 9(b) requires that a party "alleging fraud or mistake ... state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard mandates that plaintiffs alleging fraud 1) specify which statements were fraudulent, 2) identify the defendant(s) who made the fraudulent statements, 3) describe "when and where the statements were made" and 4) "explain why the statements were fraudulent." *Frank*, 547 F.3d at 570 (citation and internal quotation marks omitted). "At a minimum, [p]laintiffs must allege the time, place and contents of the misrepresentations upon which they relied" to satisfy Rule 9. *Id.* (citing *Bender v. Southland Corp*, 749 F.2d 1205, 1216 (6th Cir.1984)).

### IV. Analysis

Defendants argue that Plaintiffs' Amended Complaint should be dismissed because: (1) Plaintiffs' claims are time barred; (2) their claims are barred by res judicata; (3) their claims are derivative. (Indiv. Motion at 1, Funds' Motion at 1–

2.)[5] Fund Defendants argue that Plaintiffs' Amended Complaint should be dismissed because: (1) Plaintiffs' claims against RSH and RSI are claims against non-parties; and (2) the Amended Complaint does not meet the heightened pleading standard under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u–4, and Federal Rule of Civil Procedure 9(b). (Funds' Motion at 1–2.)

### A. Non–Parties

Fund Defendants argue that, because Plaintiffs did not name RSH and RSI as Defendants in the Amended Complaint, the Court should dismiss Plaintiffs' claims against those entities. (Funds Memo. at 1–2, ECF No. 11–1.)

In its caption, the Amended Complaint formally names RMS, RMH, RSF, RMA, RHY, Regions, RFC Holding, and MAM as Defendants. (Am. Compl. at 1.) In describing the parties, Plaintiffs identify RMS as a defendant, and RSH and RSI as portfolios offered by Defendant RMS. (*Id.* ¶ 10) ("[Defendant RMS] was an open-end, management investment company registered under the Investment Company Act ('ICA') and offered three portfolios or 'series' of common stock, each with its own investment objective: [RSS], [RSI], and [RSH]."). Counts I, II, and IV assert claims against RSH and RSI. (*Id.* ¶¶ 152, 167, 189.) Plaintiffs have not shown service on RSH or RSI.

Although Plaintiffs bring Counts I, II, and IV against RSH and RSI, the Amended Complaint identifies them only as funds offered by Defendant RMS, not as defendants. (Am.Compl. ¶ 10.) Fund Defendants' Motion to Dismiss RSH and RSI as non-parties is GRANTED.

### B. Timeliness

Defendants argue that Plaintiffs' claims are untimely because: (1) *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), does not apply to independent actions filed before a determination of class certification in pending class actions; (2) *American Pipe* does not toll the running of statutes of repose; and (3) if *American Pipe* tolled the applicable statutes of limitation and repose, that tolling ended when Plaintiffs opted-out of pending class actions by filing the Stein Arbitration. (Reply at 1–5.)

The Amended Complaint alleges three claims under the '33 Act. Count I alleges that the Funds and the Director Non-Defendants[6] violated § 11, 15 U.S.C. § 77k,[7] Count II alleges that RHY violated § 12(a)(2), 15 U.S.C. § 77*l*, and Count III alleges control person liability under § 15, 15 U.S.C. § 77(*o*). (Am.Compl. ¶¶ 165–87.) Plaintiffs' Amended Complaint alleges two claims under the '34 Act. Count IV alleges that the Funds and the Officer Non–Defendants[8] violated § 10(b) and Rule 10b–5 promulgated thereunder, 15 U.S.C. § 78j(b); 17 C.F.R § 240.10b– 5,[9] and

---

**5.** The Fund Defendants and the Individual Defendants rely on the same procedural arguments. (*See* ECF No. 10, 6.) When the Court refers to Defendants' arguments, the Court is relying on the Individual Defendants' Memorandum unless otherwise stated. (ECF No. 6.)

**6.** "Director Non–Defendants" are Allen B. Morgan, Jr., J. Kenneth Alderman, Jack R. Blair, Albert C. Johnson, William Jeffries Mann, James Stillman R. McFadden, W. Randall Pittman, Archie W. Willis, III, Carter E. Anthony ("Anthony"), Brian B. Sullivan ("Sullivan"), Charles D. Maxwell, Joseph C.

Weller, and J. Thompson Weller. (Am. Compl. ¶¶ 37, 152.)

**7.** Plaintiffs allege that the Funds are liable to Plaintiffs. (Am. Compl. ¶ 164.) "Although not naming [Director Non–Defendants] as defendants herein, [P]laintiffs claim that they violated the securities laws. . . . " (*Id.* ¶ 37.)

**8.** "Officer Non–Defendants" are James C. Kelsoe, Jr. ("Kelsoe"), Sullivan, Joseph C. Weller ("Weller"), and Anthony. (Am.Compl. ¶ 189.)

**9.** Plaintiffs allege that the Funds are liable to Plaintiffs. (Am. Compl. ¶ 195.) "Although

Count V alleges that MAM, RFC Holding, and Regions were "control persons" under § 20 of the '34 Act, 15 U.S.C. § 78t(a). (Am.Compl.¶¶ 188–202.)

Plaintiffs must successfully state a primary violation of the '33 Act or § 10(b) of the '34 Act to maintain their control person claims. *See* 15 U.S.C. 77(o)(a); 15 U.S.C. § 78t(a); *J & R Mktg. v. Gen. Motors Corp.*, 549 F.3d 384, 398 (6th Cir.2008); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 696 (6th Cir.2004). Plaintiffs must successfully state a primary violation of § 12 of the '33 Act, § 10(b) of the '34 Act, or Rule 10b–5 to maintain their state vicarious liability claims. *See Abshure v. Methodist Healthcare–Memphis Hosps.*, 325 S.W.3d 98, 110 (Tenn.2010).

Defendants argue that Plaintiffs' '33 Act claims are barred by the applicable three-year statute of repose at 15 U.S.C. § 77m. (Indiv. Memo. at 15.) Defendants argue that Plaintiffs' '34 Act claims are barred by the applicable five-year statute of repose at 28 U.S.C. § 1658(b). (*Id.* at 15–16.) Defendants argue that Plaintiffs' '33 Act claims are barred by the applicable one-year statute of limitation at 15 U.S.C. § 77m. (*Id.* at 17.) Defendants argue that Plaintiffs' '34 Act claims are barred by the applicable two-year statute of limitation at 28 U.S.C. § 1658(b)(1). (*Id.* at 17–18.)

Plaintiffs rely on the filing of *Willis et al. v. Morgan Keegan & Company, Inc. et al.*, No. 2: 07–cv–02830–SHM, and *In re Morgan Keegan Open–End Mutual Fund Litigation* (the "Open–End Fund Litigation"), No. 2:07–cv–02784–SHM, to toll the applicable statutes of limitation and repose in this case. (Indiv. Resp. at 16.) *Willis*, filed on December 21, 2007, was a securities class action on behalf of all persons who purchased or acquired shares of

RMH, RSF, RMA, or RHY. On August 5, 2013, the Court approved settlement in *Willis* and certified the class action. (Willis Order at 5–7, No. 07–cv–2830, ECF No. 345.)[10] The Open-End Fund Litigation, filed on December 6, 2007, is a securities class action on behalf of all persons who purchased or acquired shares of RSI, RSS, and RSH.

### 1. *American Pipe* Tolled the Applicable Statutes of Repose

■■■■■ Defendants argue that *American Pipe*, in which the Supreme Court held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status," does not apply to the applicable statutes of repose for Plaintiffs' Federal Law Claims. (Reply at 3.) The Court held in *Willis* that *American Pipe* applies to statutes of repose. (Willis Order at 23–24, No. 07–cv–2830). "Tolling the limitations period while class certification is pending does not compromise the purposes of statutes of limitation and repose." *Joseph v. Wiles*, 223 F.3d 1155, 1167 (10th Cir.2000). Many courts have applied *American Pipe* tolling to statutes of repose when addressing the issue of legal tolling under the '33 Act. *See e.g., Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F.Supp.2d 1157, 1166 (C.D.Cal. 2010); *In re Flag Telecom Holdings, Ltd. Sec Litig.*, 352 F.Supp.2d 429, 455, n. 19 (S.D.N.Y.2005). The Court will apply *American Pipe* to the statutes of repose applicable to claims under the '34 Act as well.

not naming [the Officer Non–Defendants] as defendants herein, [P]laintiffs claim that they violated the securities laws.... " (*Id.* ¶¶ 37, 189.)

**10.** The Open–End Fund Litigation is still pending before the Court.

Defendants argue that the Second Circuit's recent decision in *Police & Fire Retirement Systems v. IndyMac MBS, Inc.* should change the Court's analysis of the application of *American Pipe* to statutes of repose. (Reply at 5.) In *Indymac,* the Second Circuit held that *American Pipe* does not apply to statutes of repose. 721 F.3d 95, 109 (2d Cir.2013).

The Second Circuit's *IndyMac* decision is not binding on the Court. On March 10, 2014, the Supreme Court granted the petition for writ of certiorari in *IndyMac. Id., cert. granted,* —— U.S. ——, 134 S.Ct. 1515, 188 L.Ed.2d 449 (March 10, 2014) (No. 13–640). The Supreme Court has not issued an opinion. The Court will not change its analysis of *American Pipe* based on *IndyMac.*

### 2. The Stein Arbitration

▆ Defendants argue that *American Pipe* does not toll the applicable statutes of limitation for Plaintiffs' Federal Law Claims. (Reply at 1.) Defendants rely primarily on *Wyser–Pratte Mgmt. Co. v. Telxon Corp.,* 413 F.3d 553 (6th Cir.2005), which held that "a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine." *Id.* at 568.

In *Telxon,* a putative class member filed an independent lawsuit. *Id.* The Sixth Circuit relied on the policy stated in *In re WorldCom, Inc. Sec. Litig.,* 294 F.Supp.2d 431 (S.D.N.Y.2003), that "parties and courts will not be burdened by separate lawsuits which, in any event, may evaporate once a class has been certified." *Id.* at 452. The Sixth Circuit in *Telxon* relied on the district court's reasoning in *WorldCom. Telxon,* 413 F.3d at 569.

The Second Circuit has overruled the district court's decision in *WorldCom,* opining that, "We agree with Appellants that their time to file should have been tolled upon the filing of a class action

purporting to assert their claims, regardless of their having also filed individual actions asserting the same claims." *In re WorldCom Sec. Litig.,* 496 F.3d 245, 252 (2d Cir.2007). The Second Circuit observed that "[t]he theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action until and unless they received notice thereof and chose not to continue." *Id.* at 255 (internal quotation marks and citations omitted). Once members of the putative class "cease to be members of the class—for instance, when they opt out or when the certification decision excludes them—the limitation period begins to run again on their claims." *Id.* The Second Circuit's analysis and reversal of the district court's judgment in *WorldCom,* vacates the decision on which the Sixth Circuit relied in *Telxon. Telxon,* 413 F.3d at 569. The Second Circuit's analysis in *In re WorldCom* is persuasive.

The Court's Order Approving Proposed Settlement in *Willis* certified that class action. (Willis Order at 5–7, No. 07–cv–2830, ECF No. 345.) The Court excluded a person from the class if he had "filed a proceeding with FINRA against one or more of Released Defendant Parties concerning the purchase of shares in one or more of the Closed–End Funds during the Class Period and such proceeding was not dismissed to allow the Person to specifically participate as a Class Member." (Willis Order at 6, No. 07–cv–2830, ECF No. 345.) The Court opined that a person was excluded from the class if he had

filed a state court action that has not been removed to federal court, against one or more of the Defendants concerning the purchase of shares in one or more of the Closed–End Funds during the Class Period and whose claims in that action have been dismissed with prejudice, released, or fully adjudicated absent a specific agreement with such

Defendant(s) to allow the person to participate as a Class Member.

(*Id.*)

Plaintiffs filed their FINRA arbitration related to securities purchased in the closed-end Funds during the class period. (FINRA Award at 1.) The Stein Arbitration was not dismissed to allow Plaintiffs to participate as class members. *American Pipe* tolled the applicable statutes of limitation for Plaintiffs' Federal Law Claims.

Defendants argue that, if *American Pipe* applies, tolling ceased to apply when Plaintiffs filed their Statement of Claim with FINRA. (Reply at 2.) FINRA Rule 12204(b) prohibits arbitrating claims that are "based upon the same facts and law, and involve the same defendants as ... a putative class action...." A claimant may arbitrate such a claim if he gives notice that he "will not participate in the class action or in any recovery that may result from the class action." FINRA R. 12204(b)(2).

Defendants' argument that *American Pipe* tolling ceased to apply when Plaintiffs filed their Statement of Claim with FINRA is not well taken. The Statement of Claim does not contain a statement that Plaintiffs will opt out of any pending class action against Morgan Keegan. Defendants do not assert that Plaintiffs sent a letter to FINRA opting out of any such action. Defendants do not assert that the FINRA Director referred any dispute "as to whether [Plaintiffs'] claim is part of a class action" to a FINRA panel under FINRA Rule 12204(c). Defendants do not assert that any party asked the Court to decide whether Plaintiffs' claims were part of the pending class actions until August 5, 2013. Defendants do not assert that Plaintiffs opted out of the pending class actions before the Court. *American Pipe* tolled the applicable statutes of limitation for Plaintiffs' Federal Law Claims.

### 3. The *Rice* Case

Defendants' reliance on *Telxon* is similarly ill taken when applied to the *Rice* Case. Plaintiffs were added to the *Rice* Case on January 5, 2010. (*Rice* Am. Compl., ECF No. 6–8 at 1.) The *Rice* Case related to securities in the Funds purchased during the class period. The *Rice* Case was dismissed with prejudice on April 17, 2011. (*Rice Decision*, ECF No. 13–1.) Plaintiffs were not excluded from the *Willis* class until August 5, 2013. *American Pipe* tolled the applicable statutes of limitation for Plaintiffs' Federal Law Claims.

### C. Derivative v. Direct Action

■■■ Defendants argue that Plaintiffs may raise their claims only in a derivative action because the Amended Complaint focuses on the Defendants' alleged mismanagement of the Funds. (Indiv. Memo at 18–19.) Defendants cite the Alabama Supreme Court in *Ex parte Regions Financial Corp.*, 67 So.3d 45 (Ala.2010). The Alabama Supreme Court dismissed a related shareholder suit filed in Alabama state court after deciding that the claims were derivative in nature. *Id.* at 55–56.

■■■ Under general principles of corporate law, "if a shareholder's investment is frittered away by corporate mismanagement, only the corporation can recover." *See, e.g., Lubin v. Skow*, 382 Fed. Appx. 866, 870 (11th Cir.2010) (citation omitted). A plaintiff may not plead a cause of action under the federal securities laws by alleging "fraud by hindsight." That occurs when a plaintiff claims that (1) the company should have disclosed bad news earlier although it eventually revealed that news, or (2) a defendant's optimistic past statements were fraudulent because later developments proved them to be false. *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F.Supp.2d 474, 494 (S.D.N.Y.2004).

Plaintiffs' claims do not fall within the prohibited categories. Material misrepresentations in a registration statement of the risk posed by the Funds' holdings are actionable under the '33 Act. *See* 15 U.S.C. § 77k(a); *In re Citigroup, Inc. Bond Litig.*, 723 F.Supp.2d 568, 584–85 (S.D.N.Y.2010). An allegation that a statement was false when made is actionable under the federal securities laws and does not state an invalid mismanagement or fraud-by-hindsight claim. *In re Atlas Worldwide Holdings*, 324 F.Supp.2d at 494 n. 11. Plaintiffs allege that Defendants said they would not invest more than 15% of the Funds' assets in illiquid securities or more than 25% of the Funds' assets in securities related to the same industry. (Am.Compl.¶¶ 51d, 52–53, 56.) Plaintiffs also allege that those statements were misleading when made because the Funds were, at the time, in violation of the stated restrictions. (*See, e.g., id.* ¶¶ 51d, 57, 190.) Whether Defendants made those statements is a question of fact not justiciable on a motion to dismiss. *See Erickson*, 551 U.S. at 93–94, 127 S.Ct. 2197 (cautioning courts that factual disputes are not for resolution on motions to dismiss and that the facts as alleged should be read in the light most favorable to the plaintiff).

*Ex parte Regions Financial Corp.* is distinguishable because it was a separate suit with a separate complaint. That complaint is only briefly excerpted in the Alabama Supreme Court's opinion. *Ex parte Regions*, 67 So.3d at 47. Plaintiffs' allegations here are sufficient, and Plaintiffs have stated claims under the '33 Act. *In re Citigroup*, 723 F.Supp.2d at 584–85; *In re Atlas Worldwide Holdings*, 324 F.Supp.2d at 494 & n. 11. "The fact that [ ] Plaintiffs' allegations could potentially state claims for corporate mismanagement ... does not negate the applicability of federal securities laws, if the statements made in the Prospectus were materially false or misleading at the time they were made." *In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, at *13 (S.D.Cal. Jan. 3, 2005).

## D. Res Judicata

Defendants argue that Plaintiffs' claims are barred by res judicata. (Indiv. Memo at 9.) "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The party asserting res judicata as a defense must show that there is: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577–578 (6th Cir.2008). Defendants must establish all four elements.

### 1. The Stein Arbitration

Defendants argue that Plaintiffs' claims are barred by res judicata because they litigated the same claims in their FINRA arbitration. (Indiv. Memo at 9.)

Defendants rely on the Tennessee definition of privity. (Indiv. Memo. at 11–13.) Because Defendants assert that claims litigated in a FINRA arbitration bar Plaintiffs' claims, federal law applies. *See, e.g., Farber v. Goldman Sachs Grp.*, 2011 WL 666396 (S.D.N.Y. Feb. 16, 2011).

Defendants argue that the privity standard is met under federal law. (Reply at 7.) They argue that the relevant inquiry is "whether the interests of the party against whom claim preclusion is asserted were represented in prior litigation." (*Id.* at 7 (citing *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343,

346 (2d Cir.1995).) The Sixth Circuit defines a party in privity as "a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir.1992). Courts examine privity between defendants as one element in the res judicata analysis. *See Williams v. Craigie*, 110 F.3d 66, *1 (6th Cir.1997); *Johnson v. City of Houston*, 444 Fed.Appx. 26, 30–31 (5th Cir.2011); *D–Beam v. Roller Derby Skate Corp.*, 316 Fed.Appx. 966, 969 (Fed.Cir. 2008); *Creely v. Genesis Health Ventures, Inc.*, 184 Fed.Appx. 197, 201 (3d Cir.2006); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 283 F.3d 73, 75 (2d Cir.2002).

Defendants have not shown there is privity between Morgan Keegan, the defendant in the Stein Arbitration, and any of the Defendants in this case. Defendants argue that, because the subject matter of the Stein Arbitration and this case is the same, a "shared identity of interests exists" between Morgan Keegan and Defendants. (Indiv. Memo at 12–13.)

 A common nucleus of operative fact is only one factor in the privity analysis. A "shared identity of interests" takes into account the working relationship between the parties "in which the interests of the nonparty are presented and protected by the party in the litigation." *Vanmeerbeeck v. M & T Bank*, 2012 WL 2943400, at * 3–*4 (E.D.Mich. July 18, 2012). There must be some type of relationship between the parties. *See Dillard v. Bank of Am., N.A.*, 2013 WL 4590541, at *7 (W.D.Tenn. Aug. 28, 2013) (explaining that privity is met when parties stand in an employer-employee relationship, a principal-agent relationship, or an attorney-client relationship).

Defendants argue there is privity given the affiliation among the Defendants and Morgan Keegan. (Reply at 8–9.) They cite cases where a parent company and a wholly-owned subsidiary were in privity for purposes of res judicata. (*Id.*) Plaintiffs argue that the relationship between Defendants and Morgan Keegan, taken alone, is not enough to demonstrate privity. (Indiv. Resp. at 12.)

 "A corporation is constituted ... of all its stockholders; but it has a legal existence separate from them, rights and obligations separate from them." *Dorchen/Martin Assocs., Inc. v. Brook of Boyne City, Inc.*, 2013 WL 2418175, at *7 (E.D.Mich. June 3, 2013) (internal quotation marks and citation omitted). Corporations "are treated as entities separate from their officers, directors, and shareholders for purposes of preclusion just as for other purposes." *Id.* at *8 (citing 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4460 (2d ed.2002)). "One exception to this rule is that 'directors, officers, and shareholders may be in privity with a corporation and thereby assert a res judicata defense if they are named defendants solely in their capacity as directors, officers, and shareholders.'" *Id.* (internal citation omitted). Defendants are not named in the Amended Complaint solely in their capacity as directors, officers, or shareholders in Morgan Keegan.

 "Corporate affiliations may be relevant in determining whether two parties are in privity for purposes of issue or claim preclusion under this analysis where there is identity of control." *Id.* (internal quotation marks and citation omitted).

Relationships between a parent corporation and its subsidiaries should generally be regulated by the same rules as apply to other shareholders. The parent[-]subsidiary relationship does not itself establish privity. Preclusion is particularly appropriate if the parent

controlled the litigation against a subsidiary, or brought or defended an action for the benefit of the subsidiary. If different subsidiaries are involved in successive litigation, however, extra care may be required in assaying the control relationships involved, particularly if there are independent interests. *Id.* (citing Wright & Miller § 4460).

Taking Plaintiffs' allegations as true, there is no allegation that Defendants controlled Morgan Keegan in the Stein Arbitration or that Morgan Keegan adequately represented Defendants' interests there. The parent-subsidiary relationship between Morgan Keegan and Regions is not sufficient by itself to establish privity. Defendants have not shown that privity exists. The Court need not discuss the other three elements of res judicata. Plaintiffs' claims are not barred by res judicata based on the Stein Arbitration.

### 2. The *Rice* Case

Defendants assert the same arguments as to the res judicata effect of the *Rice* Case. Defendants argue that, because the district court dismissed the *Rice* Case with prejudice, there is a final judgment on the merits. (Indiv. Memo. at 10–11.) Plaintiffs argue that *Rice* did not reach a decision on the merits. (Indiv. Resp. at 2.) The Alabama Supreme Court in *Rice* decided that the *Rice* plaintiffs lacked standing to pursue their claims. (*Rice* at 25, ECF No. 13–1.)

The *Rice* Case is not a decision on the merits. The Alabama Supreme Court in *Rice* held that,

> because the claims asserted by the shareholders are properly viewed as derivative claims, and because the shareholders did not comply with the requirements of Rule 23.1 for asserting such claims, the shareholders lack standing, and the defendants' motion to dismiss should have been granted.

(*Id.*) The Alabama Supreme Court then directed the trial court to vacate its previous order denying defendants' motion to dismiss, and to enter an order granting the motion. (*Id.*)

The Supreme Court has opined that a judgment is a final decision on the merits if there are "no qualifying words" in a decree. *Johnson v. Williams,* —— U.S. ——, 133 S.Ct. 1088, 1100, 185 L.Ed.2d 105 (2013) (internal citation omitted).

> That presumption of finality ... disappears whenever the record shows that the court did not pass upon the merits but dismissed the bill because of want of jurisdiction, for want of parties, because the suit was brought prematurely, because the plaintiff had a right to file a subsequent bill on the same subject-matter, or on any other ground not going to the merits.

*Id.* (internal citation omitted).

The Alabama Supreme Court's decision in *Rice* was based on the *Rice* plaintiffs' lack of standing. That is a dismissal "for want of parties." The *Rice* decision was not a final decision on the merits. The Court need not discuss the other three elements of res judicata. Plaintiffs' claims are not barred by res judicata.

### E. Claims Pleading

#### 1. The Heightened '34 Act Pleading Standard

When a plaintiff alleges a violation of § 10(b) and Rule 10b–5, the PSLRA mandates a heightened pleading standard, a standard higher than that required by Rule 9(b). *Compare* 15 U.S.C. § 78u–4(b)(2), *with* Fed. R. Civ. P. 9(b); *Konkol v. Diebold, Inc.,* 590 F.3d 390, 396 (6th Cir.2009) (noting the more exacting pleading requirements of the PSLRA).

The PSLRA requires a plaintiff 1) "to state with particularity" the facts

constituting the alleged violation, including "specifying each statement alleged to have been misleading," 15 U.S.C. § 78u–4(b)(1); and 2) to "state with particularity the facts giving rise to a strong inference that the defendant acted with the particular state of mind." *Id.* § 78u–4(b)(2). The "particular state of mind" is known as scienter and requires a plaintiff to show that a defendant's intention was "to deceive, manipulate or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). An inference of scienter is "strong" if the inference is "more than merely plausible or reasonable—it must be cogent and at least as compelling as an opposing inference of nonfraudulent intent." *Id.* at 314, 127 S.Ct. 2499. Allegations of negligence do not support a finding of scienter. *Konkol,* 590 F.3d at 396. In the Sixth Circuit, a plaintiff at least must state allegations sufficient to find that a defendant acted with recklessness. *Mansbach v. Prescott, Ball, & Turben,* 598 F.2d 1017, 1023 (6th Cir.1979); *see also Konkol,* 590 F.3d at 396. The Sixth Circuit defines recklessness as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Mansbach,* 598 F.2d at 1025. The danger "must be so obvious that any reasonable man would have known of it." *Id.*

### a. Particularity as to Each Fund

■ Fund Defendants argue that Plaintiffs do not plead facts sufficient to determine the Funds in which Plaintiffs invested and when they did so. (Funds Memo. at 8, ECF No. 10–1.) Plaintiffs argue that, because they allege the Funds were essentially identical, they do not need to address the conduct of each Fund. (Fund Resp. at 24, ECF No. 14.)

At the motion to dismiss stage, the Court takes all of Plaintiffs' allegations as true. Plaintiffs allege that the conduct of the Fund Defendants was almost identical. (Am. Compl. ¶¶ 17, 40, 51(g).) Plaintiffs allege that they invested in all of the Funds between 2004 and 2008. (*Id.* ¶ 9.) Plaintiffs' allegations are sufficient under the PSLRA.

### b. Pleading Scienter

■ Fund Defendants argue that Plaintiffs do not allege facts sufficient to support an inference of scienter as to the Funds. (Fund Memo. at 9.) Fund Defendants argue that Plaintiffs have failed to make specific allegations of scienter as to each of the Funds. (*Id.*)

Plaintiffs assert that the Funds and Kelsoe, Anthony, Sullivan, and Weller intentionally and recklessly made untrue statements of material fact and/or omitted material facts about investment strategy, the level of investment risk, and types of portfolio holdings. (Am.Compl.¶¶ 189–90). Plaintiffs assert that those misstatements and omissions artificially inflated and maintained the prices of the Funds' securities. (*Id.*)

Kelsoe, Anthony, Sullivan, and Weller are "Officer Non-Defendants." (Am. Compl.¶ 189.) "Although not naming these individuals as defendants herein, plaintiffs claim that they violated the securities laws." (*Id.* ¶ 37.) Because they are not defendants, there can be no recovery against Kelsoe, Anthony, Sullivan, and Weller. *Cf.* p. 12.

■ To plead scienter as to the Funds, Plaintiffs may plead facts that "create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter. In most cases, the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap-*

*ital Inc.,* 531 F.3d 190, 195 (2d Cir.2008). "A plaintiff may allege facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation." *Yates v. Mun. Mortg. & Equity, LLC,* 744 F.3d 874, 885 (4th Cir.2014). Plaintiffs allege that Kelsoe, as Senior Portfolio Manager of the Funds, was responsible for selecting and purchasing the Funds' portfolio assets. (Am.Compl.¶ 18.) Although the scope of the agency relationship between Kelsoe and the Funds is a question of fact inappropriate for this review, Plaintiffs have sufficiently pled that Kelsoe, in his management of the Funds, had effective control of the operations of the Funds on a daily basis and used the Funds as a "vehicle of fraud." (*See* Am. Compl. ¶¶ 17–18, 73–76; *see also SEC v. Haligiannis,* 470 F.Supp.2d 373, 381–82 (S.D.N.Y.2007)).

■ Plaintiffs also assert an inference of scienter as to the Funds based on alleged misstatements about valuation procedures and the overconcentration of portfolio assets. (Am. Compl. ¶¶ 41, 47, 49, 52–57.) It is possible

> to raise the required inference [of scienter] with regard to a corporate defendant without doing so with regard to a specific individual defendant. As the Seventh Circuit recently observed in the wake of the Supreme Court's remand in *Tellabs,* '[I]t is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud.'

*Teamsters* 531 F.3d at 195–196, quoting *Makor Issues & Rights, Ltd. v. Tellabs Inc.,* 513 F.3d 702, 710 (7th Cir.2008). Plaintiffs allege particularized facts sufficient to establish the Funds' recklessness with regard to classifications and misrepresentations of the Funds' investments and financial statements. Among numerous allegations, Plaintiffs assert particular instances in which independent auditors determined the Funds had issued "unreliable" financial statements and the Funds had "falsely classified" assets in which they were invested (Am.Compl.¶¶ 134–35, 59–71.)

An examination of the Amended Complaint and the relevant case law demonstrates that Plaintiffs have met the PSLRA's enhanced burden as to the Funds.

### c. Reliance

■ Fund Defendants argue that Plaintiffs are not entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. U.S.,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), because the Amended Complaint alleges both fraudulent misrepresentations and omissions. (Funds Memo. at 13.) Plaintiffs argue that their claims are based in large part on omissions of material fact in the Funds' prospectuses and registration statements. (Funds Resp. at 26.)

Plaintiffs are entitled to a presumption of reliance under *Affiliated Ute.* Plaintiffs allege that the primary problem with the disclosures made in the Funds' prospectuses and registration statements was their omission of material information. (Am.Compl.¶¶ 42–44, 49, 50–57, 120–122.)

Fund Defendants argue that the Fourth Circuit's decision in *Cox v. Collins,* 7 F.3d 394 (4th Cir.1993), requires the Court to find Plaintiffs are not entitled to the *Affiliated Ute* presumption. (Fund Memo. at 13–14.) In *Cox,* the Fourth Circuit held that "The *Affiliated Ute* presumption of reliance is not warranted in a Rule 10b–5 case when the plaintiff alleges both nondisclosure and positive misrepresentation instead of only nondisclosure as in *American Ute.*" 7 F.3d at 395–96. The Court in *Cox* relied on *Cavalier Carpets, Inc. v. Caylor,* 746 F.2d 749 (11th Cir.1984). In *Caylor,* the Eleventh Circuit said, "*Ute* was a case involving primarily a nondisclosure of ma-

terial facts rather than misstatements." *Id.* at 756.

Fund Defendants concede that Plaintiffs' claims need only be "primarily premised on alleged fraudulent omissions." (Funds Memo. at 13.) Plaintiffs' claims are primarily based on Fund Defendants' omissions. Plaintiffs are entitled to the presumption of reliance under *American Ute.*

### d. Loss Causation

■ The PSLRA expressly provides that a plaintiff has "the burden of proving" that a defendant's fraudulent conduct "caused the loss for which the plaintiff seeks to recover." 15 U.S.C. § 78u–4(b)(4); *see also Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 345–46, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). Plaintiffs need only plead "a short and plain statement" showing "indication of the loss and causal connection that the plaintiff has in mind." *Id.* In the instant case, Plaintiffs have made factual allegations supporting their loss causation claims under the '34 Act (*See e.g.,* Am. Compl. ¶¶ 123–24, 128, 130.) Fund Defendants' arguments about whether Plaintiffs have established the causal relationship invite a factual inquiry unsuited to a Rule 12(b)(6) Motion.

### e. Misrepresentation and Omissions

■ Fund Defendants argue that Plaintiffs have not pled any material misrepresentations or omissions made by the Funds. (Funds Memo. at 15.)

Plaintiffs have alleged that Kelsoe, the Funds' Senior Portfolio Manager, was responsible for selecting and purchasing the Funds' portfolio assets and managing their operations. (Am.Compl.¶ 18.) Plaintiffs have alleged with particularity the numerous fraudulent statements and omissions that the Funds made through Kelsoe and MAM. (Am.Compl.¶¶ 38–48, 50–52, 72–85, 92–119.)

To the extent Plaintiffs claim that Non–Defendants Kelsoe, Weller, Sullivan, and Anthony violated securities laws, those claims are DISMISSED. Fund Defendants' Motion to Dismiss Count IV against Kelsoe, Weller, Sullivan, and Anthony is MOOT. Fund Defendants' Motion to Dismiss Count IV against the Funds is DENIED.

### 2. Section 11 Claims

■ This Court has held that, although the heightened pleading standards of the PSLRA do not apply to claims under the '33 Act, when the claims "sound in fraud," the pleading requirements of Rule 9(b) do apply. *In re Regions Morgan Keegan Sec., Derivative, & Erisa Litig.,* 743 F.Supp.2d 744, 759–60 (W.D.Tenn. 2010) (internal citation omitted). Thus, "[a]t a minimum, Plaintiffs must allege the time, place and contents of the misrepresentations upon which they relied." *Id.,* quoting *Frank,* 547 F.3d at 570.

■ Section 11 prohibits making "untrue statement[s] of material fact" or omitting statements of material fact in a security's registration statement. 15 U.S.C. § 77k(a). It protects investors who "acquired" securities in reliance on the representations contained in the registration statement. *Id.* The Amended Complaint identifies with particularity when the supposedly misleading statements were made. (Am.Compl.¶¶ 19–33.) It also makes clear which statements are alleged to have been misleading: for example, each of the Funds claimed to abide by restrictions that prohibited it from holding more than 25% of its assets in securities related to the same industry. (*Id.* ¶ 51d.) Plaintiffs allege that this statement was misleading because, for example, RMH did not, in fact, abide by the restriction. (*Id.* ¶¶ 52–55.) Fund Defendants' argument that Plaintiffs do not specify Fund Defendants' role in any allegedly fraudulent scheme is not well taken.

Fund Defendants argue that Plaintiffs have failed to plead loss causation. (Funds Memo. at 17.) Fund Defendants argue that Plaintiffs' alleged losses are not attributable to the open-end Fund's purported misstatements and omissions. (*Id.*) Fund Defendants argue that, because a Fund's net asset value ("NAV") is a statutorily defined formula that depends on the value of underlying securities, the open-end Fund's NAV cannot have declined because of any alleged disclosure or omission. (*Id.*)

■ Loss causation is not an element of a § 11 claim; it is an affirmative defense unsuitable for adjudication on a motion to dismiss. 15 U.S.C. § 771(b); *see Indiana State Dist. Council of Laborers v. Omnicare,* 583 F.3d 935, 947 (6th Cir. 2009). Plaintiffs have stated a claim under Section 11 of the '33 Act, and Fund Defendant's Motion to Dismiss that claim is DENIED.

### 3. Section 12 Claims

Section 12(a)(2) creates a cause of action based on "misleading statements, misstatements, or omissions in a ... prospectus." *J & R Mktg.,* 549 F.3d at 389; *see also* 15 U.S.C. § 771(a)(2). Plaintiffs base their allegations in Count II on the misstatements and omissions alleged in Count I. For the reasons stated in the § 11 analysis, Plaintiffs have stated a claim under § 12(a)(2) of the '33 Act.

■ Open-end Fund Defendant RMS and closed-end Fund Defendant RHY argue that Plaintiffs do not have standing to sue under § 12(a)(2). (Fund Memo at 18.) They argue that Plaintiffs have not alleged facts that support an inference that they purchased directly from any of RMS's initial offerings. (*Id.*) Plaintiffs argue that they are only required to trace their purchases to an earlier sale made pursuant to a false registration statement. (Funds Resp. at 27.) Plaintiffs also argue that,

because open-end funds have no secondary market, Plaintiffs could only have purchased directly from the fund. (*Id.* at 28 n. 15.)

Plaintiffs' argument as to RHY is not well taken. Plaintiffs rely on *Joseph v. Wiles,* 223 F.3d 1155 (10th Cir.2000). (Funds Resp. at 27.) The Tenth Circuit in *Joseph* held that an "aftermarket purchaser has standing to pursue a claim under section 11 [of the '33 Act] so long as he can prove the securities he bought were those sold in an offering covered by the false registration statement." 223 F.3d at 1159. The Tenth Circuit explicitly distinguished a claim pursuant to section 12(a)(2), opining that, "[T]he wording of the two provisions is distinctly different. Section [12(a)(2)] ... giv[es] a cause of action only to individuals who purchase securities directly from a person who sells the securities by means of a prospectus." *Id.* at 1161.

■ Plaintiffs do not have standing to pursue a Section 12(a)(2) claim against RHY. RHY is a closed-end Fund. (Am. Compl.¶ 14.) "The mere ability to trace back securities to the offering, without allegations of direct purchase, are insufficient." *In re MF Global Holdings Ltd. Sec. Litig.,* 982 F.Supp.2d 277, 323 (S.D.N.Y.2013). The court in *In re Century Aluminum Co. Sec. Litig.* opined that, "pleading purchases pursuant and/or traceable to" an offering were "conclusory allegations" and "insufficient to establish standing under Section 12(a)(2)." 749 F.Supp.2d 964, 977 (N.D.Cal.2010). Plaintiffs here allege that, "Those Plaintiffs who invested in the Select Intermediate Fund, the Select High Fund, and/or the RHY Fund purchased shares issued pursuant or traceable to the misleading registration statements and offering materials of those funds...." (Am.Compl.¶ 175.) That statement does not allege with particulari-

ty that Plaintiffs purchased their shares from RHY directly. Plaintiffs do not have standing to bring a Section 12(a)(2) claim against RHY.

■ Plaintiffs have standing to pursue a Section 12(a)(2) claim against RMS. Plaintiffs allege that it was an open-end management investment company. (Am. Compl.¶ 10.) "Open-end funds redeem their shares on the demand of the share-holder, so there is no secondary market for the shares." *I. Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co., Inc.,* 1989 WL 31676, at *1 (S.D.N.Y. March 30, 1989). Plaintiffs could only have purchased securities from an open-end fund directly from the fund. Plaintiffs have standing to bring a Section 12(a)(2) claim against RMS.

Fund Defendants' Motion to Dismiss Count II against RHY is GRANTED. Fund Defendants' Motion to Dismiss Count II against RMS is DENIED.

### V. Conclusion

Fund Defendants' Motion to Dismiss RSH and RSI as nonparties is GRANTED. Defendants' Motions to Dismiss Plaintiffs' claims as untimely are DENIED. Defendants' Motions to Dismiss Plaintiffs' claims as barred by res judicata are DENIED. To the extent Plaintiffs claim that Officer Non–Defendants Kelsoe, Weller, Sullivan, and Anthony violated securities laws, those claims are DISMISSED. Fund Defendants' Motion to Dismiss Count IV against Kelsoe, Weller, Sullivan, and Anthony is MOOT. Fund Defendants' Motion to Dismiss Plaintiffs' claims in Count IV is DENIED. Fund Defendants' Motion to Dismiss Plaintiffs' claims in Count I is DENIED. Fund Defendants' Motion to Dismiss Plaintiffs' claims in Count II against RHY is GRANTED. Fund Defendants' Motion to Dismiss Plaintiffs' claims in Count II against RMS is DENIED.

So ordered this 29th day of September, 2014